736 P.2d 495

**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**Henry VALENCIA OLAYA,**
**Defendant-Appellant.**

No. 9263.

Court of Appeals of New Mexico.

March 5, 1987.

Certiorari Denied May 7, 1987.

———

Dean E. Border, Mitchell & Border, Tucumcari, for defendant-appellant.

Hal Stratton, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

MINZNER, Judge.

Defendant appeals his conviction for possession of cocaine, contending that the trial court erred in denying his motion to suppress evidence seized prior to arrest. Defendant raises three issues: (1) whether the police roadblock violated the fourth amendment of the United States Constitution and article II, Section 10 of the New Mexico Constitution; (2) whether the state established that defendant consented to the search of his automobile; and (3) whether the search followed an unlawful detention that tainted defendant's consent. We affirm.

**BACKGROUND.**

Defendant, a Panamanian citizen, and his companion, also Latin American, were driving east from Tucumcari on Interstate 40 in a 1982 car bearing Texas license tags, approximately 20 miles from the Texas border. On October 5, 1985, at approximately 9:30 a.m., they were stopped by State Police Officers Toler and Wallace at a routine roadblock.

The officers were given permission by their immediate supervisor to establish the roadblock at a place of their choice. They were required to use reflectors, marked units, and a stop sign. They stopped all privately-owned, east-bound vehicles in order to check driver's licenses and car registrations and, for New Mexico drivers, to check proof of insurance. Commercial vehicles were waved through, as a border checkpoint for them lay several miles ahead.

When defendant drove up alongside the stop sign, Officer Toler requested his license and car registration. Defendant gave him a valid Texas driver's license; a current registration in the name of Juan Cantu; an application for Texas title transfer dated November 1, 1982, and signed by defendant and Cantu; and a retail installment contract between Cantu and GMAC dated July 26, 1982. In addition, defendant's companion gave Officer Toler his valid temporary Texas driver's license.

Officer Toler requested that defendant pull his car to the right shoulder. He testified that he did this because he smelled deodorizer in the car and because of the title irregularity. He returned to his patrol car and ran an NCIC check on defendant, his companion, and the automobile. The NCIC response was negative. He returned to defendant, handed him all his documents, and then asked defendant from where he was traveling and where he was going. Defendant said he was traveling from Albuquerque to Houston. At this point, the officer asked for consent, but here the officer's testimony and that of defendant diverges.

Officer Toler testified on direct examination that he asked defendant if he could look inside the vehicle, and that after defendant agreed, he asked if he could look in the trunk first. Defendant responded by opening the trunk with the latch inside the car. On cross-examination, the officer said that he did not specifically ask to look in the trunk. Rather, he asked defendant what he had in the car. Defendant replied he had luggage and the officer said "well, I'd like to look in your vehicle," at which point defendant said "yes, sir," and opened the trunk.

Defendant testified the officer asked what he had in the car and he replied "just luggage." The officer then said "I need to see your luggage, can you open the trunk?" Defendant said "yes, sir," and opened the trunk.

The officer and defendant agree that defendant stood near the back of the car while Officer Toler searched the trunk and opened and searched the luggage in the trunk. They also agree that the officer did not ask permission to open the luggage but that defendant did not object.

Officer Toler testified that after searching the trunk he asked if he could look inside the vehicle itself. When defendant said yes, he asked defendant to have his friend get out of the car.

Defendant, on the other hand, testified that after Officer Toler looked in the luggage he "was talking about the ownership of the car," so defendant gave him additional papers regarding the car. The additional papers apparently included a power of attorney from Cantu. Defendant testified that Officer Toler then entered the back seat. Defendant also testified that the officer never asked him if he could look in the car, but only if defendant could open the trunk.

Upon checking the passenger compartment, the officer discovered a bottle of Pine Sol. Noticing that a vent cover in the door was loose, he removed it with a screwdriver from his patrol car and discovered six small packages of tin foil containing cocaine.

Officer Toler testified that he decided he wanted to search the car thoroughly after receiving the NCIC response and before returning to defendant's car. He was suspicious because the occupants of the car were Latin American and were traveling east to a large city, and because of the irregularity in the title. According to Officer Toler's testimony, these are characteristics he believed to be common in drug cases. He also testified that he made a conscious decision not to ask for a written consent to search, even though he had consent forms in his patrol car. He estimated that about ten minutes elapsed from the time defendant entered the roadblock until the cocaine was found.

After a hearing, the trial court entered an order that contained findings of fact. With respect to the roadblock, the trial court found: "[t]he roadblock was conducted in daylight with due regard for proper location, equipment, officers and traffic conditions. The Court finds no evidence of the delegation of unbridled discretion to the officers nor did they act to assume same."

The trial court also specifically found "that Officer Toler did ask to look into the vehicle" and that "defendant was not afraid or frightened." The trial court found that "the consent to search the vehicle was not confusing nor misleading,"

and that, although defendant was present throughout the search, he did not "give the officer any indication of any lack of consent to search the automobile." Finally, the trial court found that "the brief detention was reasonable."

Based on these findings, the trial court ruled the roadblock was valid. The court sustained the search on the basis of a valid consent and denied defendant's motion to suppress.

## THE VALIDITY OF THE ROADBLOCK.

■ New Mexico recognizes the validity of routine roadblock stops for the purpose of checking driver's licenses, registrations, and proof of insurance. *State v. Bloom,* 90 N.M. 192, 561 P.2d 465 (1977); *State v. Bidegain,* 88 N.M. 466, 541 P.2d 971 (1975); *State v. Ruud,* 90 N.M. 647, 567 P.2d 496 (Ct.App.1977). The Tenth Circuit has, on several occasions, approved the application of roadblocks set up to make routine checks of licenses and registrations. *United States v. Diaz-Albertini,* 772 F.2d 654 (10th Cir.1985).

Defendant concedes the validity of systematic non-random roadblocks, but he argues that the lack of written guidelines setting explicit and neutral limitations on the conduct of individual officers violates the standards articulated in *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In *Delaware v. Prouse,* the Court held that:

[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. This holding does not preclude the * * * States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative. We hold only that

persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers.

*Id.* at 663, 99 S.Ct. at 1401 (footnote omitted). *See also Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

*Delaware v. Prouse* and the cases that have applied it prohibit unbridled discretion on the part of police officers in conducting their stops, but the facts in this case are distinguishable. Officers Toler and Wallace conducted a permissible-type roadblock designed to stop every vehicle on the highway, except commercial carriers. Moreover, the officers' conduct had explicit and neutral limitations. The record discloses that they stopped all private vehicles for the purpose of checking license, registrations, and proof of insurance.

Defendant relies heavily on cases addressing the unconstitutionality of drunk driving stops where officers in the field acted without specific guidelines set by high-ranking superior officers. *State ex rel. Ekstrom v. Justice Court of Arizona,* 136 Ariz. 1, 663 P.2d 992 (1983) (en banc); *Commonwealth v. McGeoghegan,* 389 Mass. 137, 449 N.E.2d 349 (1983). In each of these cases, a state supreme court affirmed a trial court's decision that a roadblock violated fourth amendment protection. In the first case, the record discussed a "not insubstantial amount of discretionary law enforcement activity," *State ex rel. Ekstrom v. Justice Court of Arizona,* 136 Ariz. at 5, 663 P.2d at 996, and in the second, the record failed "to establish sufficient police presence, and adequate lighting and warning to approaching motorists" and did not otherwise "establish lack of arbitrariness and undue delay." *See Commonwealth v. McGeoghegan,* 389 Mass. at 144–145, 449 N.E.2d at 353. In this case, however, the trial court ruled against defendant on this issue, and the record supports its conclusion. The roadblock in our case was valid.

Defendant asks us to adopt guidelines for evaluating a roadblock. *See State v. Deskins,* 234 Kan. 529, 673 P.2d 1174

(1983). We understand the argument to be that such guidelines are necessary to deter pretextual stops. We note that the Kansas Supreme Court has developed a three-factor analysis, stated in *Brown v. Texas,* in addition to identifying a number of factors to be considered in applying the factors. *Id.,* 673 P.2d at 1184–85. *See also State v. Superior Court in and for the County of Pima,* 143 Ariz. 45, 691 P.2d 1073 (1984) (in banc). We agree with the Kansas Supreme Court that, in addition, or as an alternative, minimum uniform standards for the operation of vehicular roadblocks might be advisable.

While this opinion was circulating, another panel of this court considered the validity of a sobriety roadblock. *See City of Las Cruces v. Betancourt,* 105 N.M. 655, 735 P.2d 1161 (Ct.App.1987). In that case, this court affirmed the trial court's denial of defendant's motion to suppress, after identifying eight guidelines that should be considered in determining the reasonableness of a roadblock. This court stated: "[b]ecause we discern no real difference between roadblocks to check for licenses and vehicle registration and roadblocks to check for sobriety, what we decide today simply adds to *State v. Ruud* the standard for determining the validity of roadblocks and guidelines useful in testing that standard." *Id.,* at page 658, 735 P.2d at page 1164.

█ We have reviewed the facts of the roadblock at issue in this appeal in light of the new guidelines. With the exception of advance publicity, the roadblock in this case satisfied the intent of each guideline. Because no one guideline is dispositive, and because there was substantial evidence to support the trial court's conclusion that the officers in this case did not have or exercise unbridled discretion, we conclude that the roadblock was valid.

## WHETHER DEFENDANT'S CONSENT WAS VOLUNTARY.

a. Standard of Review.

█ Whether consent is voluntary is a question of fact to be determined from the totality of the circumstances. *Schneckloth*

*v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Cohen,* 103 N.M. 558, 711 P.2d 3 (1985), *cert. denied,* — U.S. —, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986). It is for the trial court to weigh the evidence, determine its credibility, including the credibility of the witnesses, and decide whether the evidence is sufficient to clearly and convincingly establish that consent was given voluntarily. *State v. Bidegain.* Although we must view the evidence and inferences in the light most favorable to the prosecution, the presumption of the trial court's correctness does not replace the requirements of proof. *State v. Malouff,* 81 N.M. 619, 471 P.2d 189 (Ct. App.1970).

■ The government has a heavy burden when it seeks to justify warrantless arrests and searches. *United States v. Coker,* 599 F.2d 950 (10th Cir.1979). In the absence of a warrant, but when defendant has given permission to search, the burden is on the state to show by clear and positive evidence that consent was given without duress, coercion, or other factors which would vitiate the voluntary nature of the consent. *See State v. Aull,* 78 N.M. 607, 435 P.2d 437 (1967), *cert. denied,* 391 U.S. 927, 88 S.Ct. 1829, 20 L.Ed.2d 668 (1968); *State v. Mann,* 103 N.M. 660, 712 P.2d 6 (Ct.App. 1985).

■ Waiver of a basic constitutional right will not be presumed. *State v. Herring,* 77 N.M. 232, 421 P.2d 767 (1966), *cert. denied,* 388 U.S. 923, 87 S.Ct. 2126, 18 L.Ed.2d 1372 (1967). Although proof of knowledge of the right to refuse is not required in order to have effective consent, such knowledge is highly relevant to a determination that there has been consent. *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Since voluntary consent is a substitute for probable cause, *see State v. Herring,* it must be clear that actual consent was voluntarily given to overcome the presumption against waiver of a constitutional right.

When the defendant to be searched is illiterate or a foreigner who does not readily speak and understand English, the government's burden to show voluntary

consent is heavier. *Kovach v. United States,* 53 F.2d 639 (6th Cir.1931); *United States v. Wai Lau,* 215 F.Supp. 684 (S.D.N. Y.1963), *cert. denied,* 379 U.S. 856, 85 S.Ct. 108, 13 L.Ed.2d 59 (1964); *Restrepo v. State,* 438 So.2d 76 (Fla.App.1983). *See United States v. Rodriguez,* 525 F.2d 1313 (10th Cir.1975). *Cf. United States v. Sanchez-Jaramillo,* 637 F.2d 1094 (7th Cir.), *cert. denied,* 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 79 (1980) (defendant's difficulty with English not a factor where agents informed him of his rights and otherwise conversed with him in Spanish).

In summary, the state must establish by clear and convincing evidence that under the totality of the circumstances, some of which are listed above, the defendant's consent was given freely and was sufficient to encompass the search that followed. The trial court's analysis of the relevant factors and its conclusion, however, are not subject to de novo review. We must review the evidence in the light most favorable to the trial court's decision. The appellate court then determines only whether the evidence, viewed in the light most favorable to the finding and considering the degree of proof required, substantially supports the finding. *State v. Bidegain.*

In *State v. Cohen* the New Mexico Supreme Court adopted the three-tiered analysis set out in *United States v. Recalde,* 761 F.2d 1448 (10th Cir.1985), for determining whether a consent is voluntary. First, there must be clear and positive testimony that the consent was unequivocal and specific. Second, the government must establish that the consent was given without duress or coercion. Finally, we view the first two elements with a presumption against waiver of constitutional rights.

The scope of a consent search is limited by the actual consent. *United States v. Dichiarinte,* 445 F.2d 126 (7th Cir.1971); *Honig v. United States,* 208 F.2d 916 (8th Cir.1953); *State v. Alderete,* 88 N.M. 619, 544 P.2d 1184 (Ct.App.1976). If a search exceeds the scope of the consent that is given, the search must fail under the first tier of the *United States v. Recalde* test,

since there would not have been unequivocal and specific consent to the search that was performed. A search beyond the scope of consent is, therefore, not pursuant to a voluntary consent.

b. Applying Standard to Facts.

In the light most favorable to the state, the evidence is that Officer Toler twice asked if he might look inside the car. The second time Officer Toler asked, he had searched the trunk and searched the luggage in the trunk.

We cannot say as a matter of law that acquiescence in a request to look into a vehicle is an affirmative consent to a thorough search. *Cf. United States v. Covello,* 657 F.2d 151 (7th Cir.1981) (defendant signed form authorizing a "complete" search of his vehicle); *United States v. Torres,* 663 F.2d 1019 (10th Cir.1981), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2237, 72 L.Ed.2d 847 (1982) (defendant signed consent to a complete search; it logically follows permission to search contemplates a' thorough search). That, however, is not the question on appeal. Rather, the question is whether the evidence will support an inference that defendant voluntarily consented to a search of the car.[1] *See State v. Austin,* 91 N.M. 793, 581 P.2d 1288 (Ct. App.1978). If the evidence permits an inference that defendant consented to a search of the car, the trial court's ruling must be sustained on the ground that the consent given was unlimited. *Id.* In this event, there is no issue as to the scope of the consent. *Id.*[2]

The state cites *United States v. Espinosa,* 782 F.2d 888 (10th Cir.1986), for the proposition that a failure to object to the continuation of a search may be considered an indication that the search was within the scope of the consent. However, in *United States v. Espinosa* the defendant and his companion were both specifically asked whether agents could search the car, and defendant stated, "no problem, go ahead." *United States v. Espinosa* cites generally to *United States v. Sierra-Hernandez,* 581 F.2d 760 (9th Cir.), *cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978), which upheld a similar search where defendant watched the search and made no attempt to retract or narrow his consent. As authority for holding the search was within the scope of consent, the *United States v. Sierra-Hernandez* court cited *United States v. Miller,* 491 F.2d 638 (5th Cir.), *cert. denied,* 419 U.S. 970, 95 S.Ct. 236, 42 L.Ed.2d 186 (1974). In *United States v. Miller,* defendant permitted the IRS to remove documents for inspection and apparently acquiesced in their removal. The court held that in so doing the defendant waived any restrictions against removal that may have been contained in a letter agreeing to permit government inspection.

■ Because Officer Toler had searched the luggage in the trunk prior to asking a second time for permission to look in the car, the trial court might have concluded that there was evidence of an unlimited consent. Under these circumstances, when Officer Toler used a screwdriver to remove the loose door panel, the evidence supports a finding that he was acting with defendant's consent. Given the standard of review on appeal, we conclude the state carried its burden of proof.

**WHETHER DEFENDANT'S CONSENT WAS TAINTED.**

Defendant has argued that defendant's consent was tainted by an unlawful detention. The state contends that defendant has waived the argument by failing to iden-

---

1. *Cf. State v. Cuzick,* 21 Wash.App. 501, 585 P.2d 485 (1978) (consent to "look in the car" did not extend permission to rummage through suitcases); *People v. Sanders,* 44 Ill.App.3d 510, 3 Ill. Dec. 208, 358 N.E.2d 375 (1976) (by acquiescing in request to look into trunk, defendant did not consent to a probing exploration into a closed container in the trunk); *People v. Thiret,* 685 P.2d 193 (Colo.1984) (en banc) (defendant's oral consent to "look around" his house was not a consent to search; a "look around" connotes a casual observation of the premises).

2. *Compare State v. Price,* 363 So.2d 1102 (Fla. App.1978) (search upheld where defendant consented to search of vehicle and evidence found under jacket on car seat) *with State v. Martinez,* 102 Idaho 875, 643 P.2d 555 (App.1982) (where owner consented to search of truck, no reasonable expectation of privacy in gun case on seat).

tiny the period of time on which he relies. It seems clear that defendant relies on the period of time between Officer Toler's receiving a negative NCIC report and the time defendant consented. We understand his argument, however, to be based on a claim that defendant's testimony, rather than the officer's, was the more credible.

■ The trial court found that the brief detention was reasonable. The record supports a conclusion that there was a very brief interval between the time the officer received a negative response and the time he asked for consent, during which he asked defendant's point of origin and destination. We assume, but need not decide, that this period of time was not an unreasonable detention.

Defendant's argument on appeal has been that *State v. Cohen* is distinguishable, because in that case defendants had been advised of their rights and had signed a written consent form. We understand *State v. Cohen*, however, to have ruled, alternatively, that where the detention was not unreasonable, it was not sufficient to taint defendant's consent. In view of the trial court's finding concerning the detention, we conclude that *State v. Cohen* controls. *See also Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973).

## CONCLUSION.

Having reviewed the record in light of the requisite standard, we conclude that the roadblock was valid and that the state carried its burden of proof as to defendant's consent. Under these circumstances, the trial court's decision to deny defendant's motion to suppress must be affirmed.

IT IS SO ORDERED.

BIVINS and FRUMAN, JJ., concur.