893 P.2d 455

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Derilee WRIGHT, Defendant–Appellant.**

**No. 15472.**

Court of Appeals of New Mexico.

Feb. 14, 1995.

Certiorari Denied March 23, 1995.

Gary C. Mitchell, Gary C. Mitchell, P.C., Ruidoso, for defendant-appellant.

Tom Udall, Atty. Gen. and Margaret McLean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

DONNELLY, Judge.

Defendant appeals her convictions for conspiracy to traffic cocaine and possession of drug paraphernalia. The central issue presented on appeal is whether the trial court properly denied Defendant's motion to suppress evidence seized following a warrantless search of a bedroom occupied by Defendant and her boyfriend in the home of another person. In addressing this issue, we consider whether Defendant had standing to challenge the validity of the search, whether the third-party consent underlying the search was valid, and whether the search and seizure were validated by reason of the officers' protective sweep of the premises. For the reasons discussed herein, we reverse.

## FACTS

On the evening of May 8, 1992, Defendant and her boyfriend, John A. Corman III, followed Deidre Wertz to the trailer home owned by Mark Allen. Corman, accompanied by Defendant, and Wertz drove in two separate cars. The trailer home was located in a mobile home park in Alamogordo, New Mexico. Shortly after they arrived at the trailer, at approximately 6:00 p.m., Wertz introduced Defendant and Corman to Allen, who lived in the trailer. Defendant and Corman asked Allen if they could use the back bedroom. Allen gave them permission and, according to Defendant, invited them to spend the night. Shortly thereafter, Defendant and Corman went to the bedroom and closed the door.

Defendant and Corman had occupied the bedroom for approximately five or ten minutes when two police officers, Al Marchand and Ted Eldridge, arrived at the trailer. Marchand had gone to the residence in response to a Crime Stoppers tip indicating that cocaine and marijuana had been delivered to the trailer home and were being divided up for sale. After observing that several vehicles were parked outside the trailer, Marchand called Eldridge and asked Eldridge to assist him in following up on the tip. Following Eldridge's arrival, the two officers approached the front door of the trailer, and before they had the opportunity to knock, Wertz opened the door and said, "Hi." At the time, neither officer knew who owned the trailer or the vehicles parked in front of the residence. Marchand showed Wertz his badge and identified himself and Eldridge as police officers. Marchand asked Wertz if they could come inside and talk. Wertz gave no verbal response but opened the door wider and stepped back inside the trailer. Marchand testified that he assumed Wertz's nonverbal behavior indicated that she consented to the officers' entry.

After entering the trailer, Marchand stated that he became concerned about his safety because there were several vehicles parked outside the trailer, yet, at that point, Wertz was the only person he had seen inside the residence. He asked Wertz if anyone else was in the trailer, and she said that only she and her two children were there. Wertz opened the door of the bedroom where her children were sleeping, and Marchand saw the children. Marchand testified that he noticed a light coming from under the door of another bedroom, and, concerned for his and Eldridge's safety, he asked Wertz if anyone was in there. Wertz replied that she did not think so, whereupon Marchand asked if he could go look. Wertz said, "Oh, it's not my place, but go ahead." Eldridge started to open the door of the back bedroom, and it was immediately closed from inside. The two officers reopened the door, and saw Defendant and Corman sitting on the bed.

After looking into the room, Marchand noticed what appeared to be drug paraphernalia located near Defendant and Corman. The officers separated Defendant and Corman and placed both of them under arrest. Eldridge found cocaine on Defendant. Thereafter, Marchand went outside to look inside Corman's van and noticed two beer cans that had been converted into crack pipes and other drug paraphernalia. He opened the door of the van and seized the items. Marchand testified that he learned that the van belonged to Corman after he placed Defendant and Corman under arrest.

The evidence is conflicting as to when the officers learned that Wertz was not an owner or regular occupant of the trailer. Marchand testified that after Wertz pointed to her children sleeping in the bedroom, he asked her if he could look around the trailer for drugs, and at *that* point Wertz informed him that it was not her trailer. On cross-examination, however, Marchand said, "Right when I asked [Wertz] if I could come [inside the trailer], she did say, 'This is not my trailer.' That's when she opened the door and stepped back."

Defendant moved to suppress the evidence seized by the officers. The trial court ruled that Defendant lacked standing to object to the search of the bedroom because she failed to prove that she was an overnight guest of the owner. The trial court also determined that the officers, before commencing a search of other portions of the trailer, had sufficient bases to conclude that Wertz had actual or apparent authority to give her consent to a search of the residence.

## DISCUSSION

### I. Issue of Defendant's Standing

The State contends that Defendant lacks standing to challenge both the officers' entry into the trailer and their subsequent entry into the back bedroom. We need not decide whether Defendant had standing to challenge the officers' initial entry into the trailer, because, on the basis of the undisputed facts before us, we hold as a matter of law that she had standing to challenge the officers' warrantless entry into the bedroom occupied by her.

Once a defendant has established that law enforcement officers have entered the premises of another and conducted a warrantless search and seizure in an area wherein the defendant has a reasonable expectation of privacy, the state has the burden of coming forward with evidence to show that the search and seizure came within a valid exception to the search warrant requirements imposed by the State and United States Constitutions. *See State v. Burdex,* 100 N.M. 197, 202, 668 P.2d 313, 318 (Ct. App.) (absent obtaining a search warrant or valid consent, intrusion into a private residence must be justified by a showing of exigent circumstances), *cert. denied,* 100 N.M. 192, 668 P.2d 308 (1983); *see also State v. Crenshaw,* 105 N.M. 329, 332, 732 P.2d 431, 434 (Ct.App.1986). The state has a heavy burden when it seeks to justify warrantless arrests and searches. *State v. Valencia Olaya,* 105 N.M. 690, 694, 736 P.2d 495, 499 (Ct.App.), *cert. denied,* 105 N.M. 689, 736 P.2d 494 (1987). Where the state asserts that the search and seizure conducted by law enforcement officers were consensual, "the burden is on the state to show by clear and positive evidence that consent was given without duress, coercion, or other factors which would vitiate the voluntary nature of the consent." *Id.* Unless the officers' entry into the place where the evidence was seized is found to be lawful, all observations made or things seized by them are subject to exclusion. *Crenshaw,* 105 N.M. at 332, 732 P.2d at 434.

The State asserts that the trial court in considering the facts before it could reasonably determine that the officers had proper authority to enter the residence, and in any event that Defendant lacked the necessary standing to object to the search and seizure of the evidence in question. In reviewing the propriety of the trial court's ruling on a motion to suppress, we scrutinize the record to determine "whether the law was correctly applied to the facts, viewing them in the manner most favorable to the prevailing party." *State v. Esguerra,* 113 N.M. 310, 313, 825 P.2d 243, 246 (Ct.App. 1991); *see also State v. Munoz,* 111 N.M. 118, 120, 802 P.2d 23, 25 (Ct.App.) (a trial

court's denial of a motion to suppress will not be disturbed if it is supported by substantial evidence, unless it also appears that the determination of the court was erroneously premised), *cert. denied,* 111 N.M. 136, 802 P.2d 645 (1990).

■ In reviewing the State's challenge to Defendant's standing, we begin our analysis by noting that resolution of this issue hinges on whether Defendant had a reasonable expectation of privacy in the place entered. *Esguerra,* 113 N.M. at 313, 825 P.2d at 246. Determination of whether an individual has a reasonable expectation of privacy involves two inquiries: First, has the person by his or her conduct shown an actual expectation of privacy; and, second, is the person's subjective expectation one that society recognizes as reasonable. *Id.* An individual's reasonable expectation of privacy is protected under both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. In the instant case, Defendant has invoked the protection of both the state and United States constitutional provisions.

■ The State relies in part upon *Minnesota v. Olson,* 495 U.S. 91, 98–99, 110 S.Ct. 1684, 1688–89, 109 L.Ed.2d 85 (1990), for the proposition that Defendant's mere presence in the trailer and lack of evidence that she was an overnight guest was insufficient to confer upon her a legitimate expectation of privacy in a bedroom of the residence. The State correctly points out that *Olson* holds that a person's status as an overnight houseguest is sufficient to confer standing to challenge the warrantless entry by police in a residence, *id.;* however, we do not read *Olson* to make an individual's overnight status as a houseguest a precondition to the right to assert an invasion of a reasonable expectation of privacy under the Fourth Amendment to the United States Constitution. *Cf.* 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.3(b), at 73 (2d ed. Supp.1995) (*Olson* "lends considerable support" to view that something short of overnight stay will satisfy standing requirement).

Moreover, we do not believe that the framers of Article II, Section 10 of the New Mexico Constitution intended that an individual's freedom from unreasonable searches and seizures should be interpreted so narrowly as to hold that an overnight stay is necessary in order to confer a legitimate expectation of privacy upon houseguests, especially if those houseguests, with the permission of an owner or occupant of the property, are permitted to use a private part of the residence. Because the State does not dispute that the door to the bedroom occupied by Defendant and Corman was closed and that Allen had given his consent for Defendant and Corman to occupy the room, we think Defendant had a reasonable expectation of privacy in the bedroom. Nor does it matter how little force the officers employed in opening the door to the bedroom.

The State also relies, in part, upon *State v. Hensel,* 106 N.M. 8, 738 P.2d 126 (Ct.App.), *certs. denied,* 105 N.M. 720, 737 P.2d 79, *and cert. denied,* 484 U.S. 958, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987), in support of its contention that Defendant did not have a reasonable expectation of privacy in the bedroom. We disagree. In *Hensel* there was evidence that the defendant did not have permission to be on the premises. 106 N.M. at 9, 738 P.2d at 127. The *Hensel* Court held that "mere presence" on the premises is insufficient to give an individual standing to object to police entry. *Id.* In the present case, the State does not dispute that Defendant had permission to enter the trailer and to occupy the bedroom.

Additionally, the State cites *United States v. Rosario,* 962 F.2d 733 (7th Cir.1992) in support of the trial court's determination that Defendant lacked standing in the present case. The *Rosario* court did not directly address the issue of standing. The court in *Rosario* did, however, allude to the fact that because the defendant and the person who rented the hotel room allowed the consenting party "unfettered access to the door," the defendant's expectation of privacy was contingent on the decisions of the consenting party. *Id.* at 737. Even if we were to assume arguendo that a person gives up his or her legitimate expectation of privacy whenever another houseguest also has access to the premises, an individual's reasonable

expectation of privacy in a bedroom with the door closed is not surrendered, except in the case of a co-occupant of the bedroom. We hold that Defendant had standing to assert an invasion of her reasonable right of privacy under the circumstances existing here.

## II. *Lawfulness of Consent*

■ Warrantless searches of a residence are valid if they are conducted after law enforcement officers have obtained the valid consent by the owner of the place sought to be searched. *State v. Grossman,* 113 N.M. 316, 319–20, 825 P.2d 249, 252–53 (Ct.App.1991). Consent to conduct a search may also be given by someone who is clothed with common authority or possesses some other sufficient relationship concerning the premises in question. *State v. Clark,* 105 N.M. 10, 14, 727 P.2d 949, 953 (Ct.App.), *cert. denied,* 104 N.M. 702, 726 P.2d 856 (1986); *see also State v. Madrid,* 91 N.M. 375, 377–78, 574 P.2d 594, 596–97 (Ct.App.), *cert. denied,* 91 N.M. 491, 576 P.2d 297 (1978). The State, although conceding that Wertz did not have actual authority to grant consent to the officers' entry into the trailer or the bedroom in question, argues, however, that Wertz possessed apparent authority to consent to the entry and search. The issue of whether an individual clothed with apparent authority to consent to a search may give lawful consent to law enforcement officers to enter and search the premises owned by another constitutes a question of first impression in New Mexico. *See Munoz,* 111 N.M. at 120, 802 P.2d at 25 (declining to reach the issue of apparent authority).

Although Marchand testified that Wertz told him the place was not hers, Marchand testified that he did not believe what Wertz had told him, he also stated that he thought that she might be a baby-sitter. The State argues that, because of the conflicting evidence, the trial court's ruling refusing to suppress the evidence should be upheld because the officers reasonably believed that she possessed common authority over the premises. *See United States v. Matlock,* 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 993 n. 7, 39 L.Ed.2d 242 (1974) ("common authority" exists to consent to a search of the premises

where the third party is a "co-inhabitant."). The State supports this argument, in part, on the evidence that Wertz greeted the officers, opened the door to the trailer, and told the officers that her children were in the trailer.

In advancing this argument, the State asserts that *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), supports its claim concerning the lawfulness of the consent to enter and search under the circumstances presented here. *Rodriguez* held that "a warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not do so." *Id.* at 179, 110 S.Ct. at 2796. In determining reasonableness, an objective standard is applied. *Id.* at 188, 110 S.Ct. at 2801. In *Rodriguez* the defendant's girlfriend (or ex-girlfriend) led police to the defendant's apartment, referred to the apartment as " 'our' apartment", had a key to the apartment, and told police that she had clothes and furniture there. *Id.* at 179, 110 S.Ct. at 2796. In fact, she no longer lived there, did not have access to the apartment when the defendant was not there, and did not have permission to take the key. *Id.* at 180–81, 110 S.Ct. at 2797–98. The Supreme Court remanded the case for consideration of the question of whether the police officers reasonably believed that authority to give consent for entry into the apartment existed. *Id.* at 189, 110 S.Ct. at 2801–02.

We think the State's reliance on the officers' subjective belief that Wertz had "apparent authority" to give consent to search the residence and the bedroom occupied by Defendant and Corman runs counter to the provisions of Article II, Section 10 of the New Mexico Constitution. As noted by our Supreme Court in *State v. Gutierrez,* 116 N.M. 431, 446–47, 863 P.2d 1052, 1067–68 (1993), an individual's right to be free from unreasonable searches and seizures under Article II, Section 10 of our state constitution precludes the erosion of such right by recognition of a "good faith" exception as articulated by the United States Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We think

the State's argument that this Court should recognize an "apparent authority" rule violates Article II, Section 10 of the New Mexico Constitution and is contrary to the rationale underlying our Supreme Court's decision in *Gutierrez,* 116 N.M. at 446–47, 863 P.2d at 1067–68.

Absent additional facts that indicate that a sufficient relationship existed, *see Madrid,* 91 N.M. at 378, 574 P.2d at 597 (where consenting party is not a resident in a given home, party has authority to grant consent if he or she has "sufficient relationship to the premises" (quoting *Matlock,* 415 U.S. at 171, 94 S.Ct. at 993)), we conclude that it was unreasonable for the officers in the present case to rely on the consent of Wertz for the search of the closed bedroom occupied by Defendant and Corman. In sum, we conclude that where the State relies upon consent to justify a warrantless search of a residence, there is no "apparent authority" exception under Article II, Section 10 of the New Mexico Constitution.

III. *Search Incident to Protective Sweep*

 The State alternatively argues that the search of the bedroom by Officers Marchand and Eldridge was justified as a protective search or sweep. In *State v. Valdez,* 111 N.M. 438, 440, 806 P.2d 578, 580 (Ct.App. 1990), *cert. denied,* 111 N.M. 316, 805 P.2d 85 (1991), however, we declined to extend the protective sweep exception to situations where the search in question was conducted prior to the defendant's arrest. In *Valdez* this Court, citing *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), held that "[a] protective sweep is only allowed incident to a lawful arrest." *Valdez,* 111 N.M. at 440, 806 P.2d at 580. Because the officers entered and searched the bedroom before they arrested Defendant and Corman, we hold that the search and seizure in the instant case cannot be upheld as a protective sweep.

Accordingly, we conclude that the motion to suppress the contraband found in the bedroom and on the person of Defendant should have been granted, because the contraband was fruit of an illegal search. *See State v. Zelinske,* 108 N.M. 784, 789, 779 P.2d 971, 976 (Ct.App.1989). Contraband seized from Corman's van was also fruit of the illegal search, because any probable cause the police officers had to search the van was a result of their discovery of contraband in the bedroom of the trailer and on the person of Defendant. Moreover, the officers did not learn that Corman was the owner of the van until after arresting both Corman and Defendant.

*CONCLUSION*

Defendant's convictions are set aside, and the cause is remanded to the trial court for a new trial excluding the unlawfully obtained evidence.

IT IS SO ORDERED.

ALARID and FLORES, JJ., concur.