925 P.2d 4

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Jose DIAZ, Defendant–Appellee.**

**No. 16617.**

Court of Appeals of New Mexico.

Sept. 10, 1996.

Tom Udall, Attorney General Bill Primm, Assistant Attorney General, Santa Fe, for plaintiff-appellant.

T. Glenn Ellington, Chief Public Defender Karl Erich Martell, Assistant Appellate Defender, Santa Fe, for defendant-appellee.

## OPINION

BOSSON, Judge.

1. The State appeals from an order of the district court granting Defendant's motion to suppress physical evidence obtained during a warrantless search of Defendant's bedroom, arguing that the search was justified by the consent of Defendant's father. The only issue on appeal is the validity of the third-party consent to the search. We affirm.

### FACTUAL AND LEGAL BACKGROUND

2. On the evening of March 10, 1995, agents of the Las Cruces–Dona Ana County Metro Narcotics Agency, accompanied by uniformed officers of the Dona Ana County Sheriff's Office, went to the home of Manuel Diaz, Defendant's father. They were responding to a tip from a confidential informant that there was marijuana in the house. The agents testified that their purpose was to secure the premises until a search warrant could be obtained.

3. Upon their arrival the agents met Defendant in front of the house. They informed Defendant of their purpose and left him outside the house in the custody of a uniformed sheriff's officer. The agents then went inside the house where they met Mr. Diaz, who had been in bed asleep when the agents arrived. After the house was secured, one of the agents, Sgt. Marmolejo, returned to his office to prepare an affidavit for a search warrant. Upon his arrival at the office, Sgt. Marmolejo received a call from Agent Acosta, who had remained at the Diaz home, telling him that Mr. Diaz had consented to a search of the house.

4. When Sgt. Marmolejo returned to the Diaz house, he was told that Mr. Diaz had signed a consent to search form. Mr. Diaz also told Agent Acosta that he lived in the house with his two sons: Defendant, aged 29, who lived there regularly and another son who stayed with him only occasionally. Mr. Diaz also stated that he was the owner of the house and paid all the bills associated with it. His sons did not pay rent. The agents decided to proceed without a warrant; they never asked Defendant for consent to search his bedroom despite Defendant's presence in the yard the entire time.

5. Based upon the father's consent, the agents began a warrantless search. Defendant's bedroom had no door but did have a blanket hanging from the top of the door frame. When the agents were in the hallway outside the bedroom, they smelled an odor of

what they thought was marijuana coming from that room. They then searched Defendant's bedroom and found the marijuana.

6. Defendant was indicted by the Dona Ana grand jury for possession of marijuana with intent to distribute under NMSA 1978, Section 30–31–22A(1)(a) (Cum.Supp.1996). Defendant moved to suppress the marijuana arguing that no consent had been obtained from Defendant and that the permission given by Mr. Diaz to search was invalid as to Defendant's private living space. The district court granted the motion after finding that (1) Defendant had standing to contest the search, (2) the consent to search given by Mr. Diaz was ineffective to permit the search of Defendant's bedroom, and (3) the police should have obtained a search warrant before searching Defendant's room.

## DISCUSSION

■ 7. In his motion to suppress, Defendant argued that the warrantless search of his portion of the house and the subsequent seizure of evidence violated the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. An appellate court reviews the district court's ruling on a motion to suppress to determine whether the law was correctly applied to the facts, viewing the facts in the light most favorable to the prevailing party. *State v. Esquerra*, 113 N.M. 310, 313, 825 P.2d 243, 246 (Ct.App. 1991).

■ 8. A search and seizure conducted without a warrant is unreasonable unless it is shown to fall within one of the exceptions to the warrant requirement. *State v. Munoz*, 111 N.M. 118, 119, 802 P.2d 23, 24 (Ct.App.), *cert. denied*, 111 N.M. 136, 802 P.2d 645 (1990). The state has a heavy burden when it seeks to sustain a warrantless search. *State v. Valencia Olaya*, 105 N.M. 690, 694, 736 P.2d 495, 499 (Ct.App.), *cert. denied*, 105 N.M. 689, 736 P.2d 494 (1987).

■ 9. A valid consensual search has been acknowledged as an exception to the warrant requirement. *State v. Mann*, 103 N.M. 660, 664, 712 P.2d 6, 10 (Ct.App.1985), *cert. denied*, 103 N.M. 740, 713 P.2d 556 (1986). Consent to a search may come from

not only the owner of the property, but also from a third party who has common authority over that property. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 992–93, 39 L.Ed.2d 242 (1974). The state has the burden of establishing common authority, *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 2797–98, 111 L.Ed.2d 148 (1990), and must therefore come forward with persuasive evidence of both shared use and joint access in order to support a third-party consent, *Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7.

10. The Supreme Court elaborated upon the doctrine of third-party consent in the *Matlock* decision and described common authority as follows:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, ... but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* (citations omitted). In *Matlock*, the defendant was arrested in the yard of the house where he lived and taken to a squad car. The police then conducted a warrantless search of the defendant's bedroom on the basis of a third-party consent given by a woman who shared an apartment with the defendant. *Id.* at 166–67, 94 S.Ct. at 990–91. Because of the co-occupancy, it appeared to the Court, without making an actual determination, that she had sufficient common authority over the bedroom to give consent in her own right in the absence of the defendant. *Id.* at 177, 94 S.Ct. at 996.

11. In this case, the State asserts that the ruling below was erroneously premised and contends that because Mr. Diaz had common authority over Defendant's bedroom, the consent to search was valid. The State bases the common authority argument on: (1) the status of Mr. Diaz as the owner, (2) his status

as a parent, and (3) his access to Defendant's room.

■ 12. As to the first argument, mere status as the owner cannot resolve the question of the validity of the consent. Common authority cannot be implied from a mere property interest. *Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7. To establish Mr. Diaz's common authority, the State was required to show more than ownership of the house. The evidence had to demonstrate that Mr. Diaz had "joint access or control for most purposes" over an area of "mutual use." *See id.*

■ 13. The second status argument advanced by the State appears to be that a parent may give a valid consent to the search of his child's room, regardless of the circumstances. Professor LaFave suggests that this type of reasoning may derive from the consenting party's parental authority, particularly when a minor child is involved. 3 Wayne R. LaFave, *Search and Seizure* § 8.4(b), at 767 (3d ed. 1996). In the cases cited by the State and by LaFave, the courts frequently incorporate a discussion of parental status in their decision. However, rather than this being the determinative factor, it is typically addressed as one of several factors to be considered in analyzing searches under the *Matlock* common authority standard. Other factors considered by these courts have included whether the parents had keys to the child's room, whether the parents cleaned the room, whether the child shared the room with siblings, whether the parents used the room themselves or for other purposes, or whether the area was a common area or a private one.

14. Furthermore, as the court observed in *United States v. Whitfield*, 939 F.2d 1071 (D.C.Cir.1991), the assumptions underlying a parent's relationship to a minor child and the child's bedroom may not apply when the child is 29 years old. *Id.* at 1075. *Whitfield* also involved a 29-year-old son who, like Defendant, had a bedroom in his parent's house. *Id.* This circumstance, by itself, was insufficient to establish common authority on the part of the parent to consent to a warrantless search by FBI agents. *Id.* The court suppressed the evidence obtained during the search because the government had not met its burden of showing that the parent had authority to consent to a search of the son's room. *Id.* No evidence had been developed as to whether the parent had met the *Matlock* requirement of both joint access and mutual use. *Id.; see also State v. Peterson*, 525 S.W.2d 599, 608 (Mo.Ct.App.1975) (father's authority to consent to search of defendant's room rested on whether father had retained right of joint access to and joint control over defendant's room). Under the facts and circumstances of this case, Mr. Diaz's status as a parent did not, without more, empower him to consent to a search of his 29-year-old son's room. We offer no intimation about the validity of a parent's consent in the case of a minor child.

■ 15. The State must justify the parent's consent on the basis of its third argument: a showing that Mr. Diaz had both joint access for most purposes and mutual use of Defendant's room. *See Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7. Mr. Diaz testified at the suppression hearing that he could go into his son's room (for example, if he wanted a cigarette), but did so rarely. Defendant had never told him not to enter the room. Although this information might have been sufficient to show joint access to the room by father and son, under the *Matlock* standard this evidence was only part of what was needed to establish common authority. No evidence was presented of mutual use of the room by Mr. Diaz and Defendant. Notwithstanding that Mr. Diaz might have felt free to enter Defendant's bedroom, he testified that he did not inspect, maintain, or clean the room. Understandably for an adult occupant, his son "was in charge of that room." The district court could reasonably have found that Defendant's room was his private area. Agent Acosta's testimony can be seen as confirming this view. He testified that Mr. Diaz told him that he was not aware of anything in either of his sons' rooms. The district court properly concluded that the state did not establish common authority under the *Matlock* standard.

16. As co-occupants of the family home, either Mr. Diaz or Defendant could have

given consent to search the common areas. By virtue of their joint access and mutual use of those areas, it would be reasonable to find that they had assumed the risk that one of them might consent to a search of the *common* areas. *See id.* at 171 n. 7, 94 S.Ct. at 993 n. 7. However, unlike *Matlock,* Mr. Diaz and Defendant were not co-occupants of Defendant's bedroom. Defendant had far greater access and control and a superior privacy interest. It was reasonable for the district court to find that only Defendant could have given valid consent to a search of his bedroom, and Defendant was not asked to do so by the agents even though he was present throughout the search. Other jurisdictions have held as a matter of law that if the person whose property is to be searched is present, then the police must request his consent for the search rather than relying on the consent of a third party. *See United States v. Impink,* 728 F.2d 1228, 1234 (9th Cir.1984) ("[W]hen the police intentionally bypass a suspect who is present and known by them to possess a superior privacy interest, the validity of third party consent is less certain."); *State v. Leach,* 113 Wash.2d 735, 782 P.2d 1035, 1040 (1989) (en banc) (whenever cohabitant present, police must also obtain cohabitant's consent so individual's Fourth Amendment rights are not denied for sake of expediency). However, we do not need to reach that issue because the district court resolved this case on the narrower question of whether Mr. Diaz had actual authority to consent under *State v. Wright,* 119 N.M. 559, 893 P.2d 455 (Ct.App.), *cert. denied,* 119 N.M. 389, 890 P.2d 1321 (1995).

■ 17. The State asserts that Mr. Diaz gave the police no reason to doubt his authority to consent to a search of Defendant's bedroom and that without Mr. Diaz's assurances of authority, the agents would have obtained a search warrant. The State also argues that the district court decision should not be upheld because of the burden it would place on the police in ascertaining the extent of a third party's authority to give consent. Essentially the State is arguing that Mr. Diaz had apparent authority to consent. In *Wright,* however, this Court determined that when the police are relying upon the consent of a third party to conduct a warrantless search of another's premises, the third party must have actual, not apparent, authority to grant that consent. 119 N.M. at 565, 893 P.2d at 461. This Court declined to adopt the "apparent authority" exception formulated by the United States Supreme Court in *Rodriguez,* 497 U.S. at 179, 110 S.Ct. at 2796, on the grounds that recognizing apparent authority to give consent would violate Article II, Section 10 of the New Mexico Constitution. *Cf. State v. Gutierrez,* 116 N.M. 431, 446–47, 863 P.2d 1052, 1067–68 (1993) (declining to adopt the "good faith" exception for flawed search warrants recognized by the United States Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)).

18. Applying *Wright* to this case, we hold that under Article II, Section 10 of the New Mexico Constitution, the State was required to show the actual authority of Mr. Diaz for his third-party consent to be valid. It is clear that the State did not meet its burden. From the testimony at the suppression hearing, it is debatable whether the State could even have established apparent authority on the part of Mr. Diaz, let alone actual authority. *See Whitfield,* 939 F.2d at 1074–75 (cursory questioning by FBI agents insufficient to establish reasonable belief that defendant's parent had authority to consent to search); *United States v. Harris,* 534 F.2d 95, 96–97 (7th Cir.1976) (police cannot rely on bald assertion of authority by third party when they are aware of facts casting doubt on that assertion).

19. Based on the evidence before it, the district court could reasonably conclude that the State did not establish that Mr. Diaz had actual authority to consent to the search. This case demonstrates the risk inherent in relying upon third-party consent in ambiguous circumstances—a risk that can be easily avoided, in the absence of exigent circumstances, by obtaining a search warrant. New Mexico case law has consistently expressed the preference for search warrants. *See Campos v. State,* 117 N.M. 155, 159, 870 P.2d 117, 121 (1994) ("We strongly favor the warrant requirement."); *State v. Cordova,* 109 N.M. 211, 217, 784 P.2d 30, 36 (1989) (firmly rooted warrant requirements effectuate prin-

ciples of Article II, Section 10 of our Constitution).

*CONCLUSION*

20. We hold that the seized evidence was the product of an illegal search under Article II, Section 10 of the New Mexico Constitution. The motion to suppress was properly granted. We affirm the district court.

21. IT IS SO ORDERED.

APODACA, C.J., and PICKARD, J., concur.