1998-NMCA-117

964 P.2d 164

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Mark WALKER, Defendant–Appellee.**

No. 18773.

Court of Appeals of New Mexico.

June 30, 1998.

Certiorari Denied Aug. 13, 1998.

---

Tom Udall, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, for Plaintiff–Appellant.

Liane E. Kerr, Albuquerque, for Defendant–Appellee.

## OPINION

DONNELLY, Judge.

{1} The State appeals from an order granting Defendant's motion to suppress evidence, including photographs and observations made by police following a search of Defendant's residence. The search of the residence was made pursuant to consent given by Karen Slattery (Slattery) who had been living with Defendant. The trial court found that Slattery possessed no authority to

consent to a search of the premises at the time she gave her consent. For the reasons discussed herein, we reverse the trial court's order.

*FACTS*

{2} At the time of the events involved in this case, Slattery and Defendant lived together for approximately six years. Slattery and Defendant lived in an apartment under a lease assumed by Defendant from his mother. Slattery cohabited with Defendant in this apartment in Albuquerque, New Mexico, for approximately one and one-half years, with the exception of approximately one month, a year prior to the events in question, when she moved out to live with her mother after another alleged incident of domestic violence. While living at the apartment, Slattery ate and slept there, kept her personal belongings there, and had complete access to all areas in the apartment, including the kitchen, bathroom, bedroom, and living room. Defendant had a key to the apartment and asserted that Slattery also had possessed a key at one time, but that she had lost it. Defendant testified that he had asked Slattery to move out of the apartment in July 1996. Despite this, Slattery continued to share the apartment and sleep in the same bed with Defendant until October 30, 1996. The trial court found that, except for the approximately one month interval when she moved out, both Defendant and Slattery had joint access to and mutual use of the entire apartment until October 30, 1996.

{3} According to Slattery's testimony, during the latter period of her cohabitation with Defendant, perhaps as late as October 26, 1996, he physically assaulted her and he prevented her from freely leaving the apartment. She testified that Defendant would barricade the bedroom door at night with a heavy toolbox so that he would be awakened if she attempted to leave. Slattery stated that she finally escaped from the apartment "[b]ecause it was a—I had finally had enough and it was a chance when he left me by myself there that I could finally just get out of there." Following the hearing on the motion to suppress, the trial court found that Slattery had been confined inside the apartment from October 26 to October 30, 1996, during which time she was allegedly raped and battered by Defendant.

{4} On October 30, 1996, when Defendant briefly left her alone in the apartment, Slattery gathered some things and rode her bicycle to a hospital. As she was riding away from the apartment, Slattery saw Defendant return. Slattery testified that she did not tell Defendant that she was leaving because she was afraid of him. After Slattery arrived at the hospital, security personnel contacted the police. In the early morning hours of October 31, Slattery returned to the apartment with police officers. At that time, Slattery agreed to sign a consent form authorizing the officers to search the apartment. Because Defendant was not present and Slattery had no key, the officers entered the apartment by breaking down the door. During their search, the officers took photographs, which allegedly indicated that the windows of the apartment were barricaded and which showed the toolbox reportedly used to barricade the bedroom door. Thereafter, Defendant moved to suppress evidence taken by the police during the search.

{5} At the hearing on the motion to suppress, Slattery testified that, when she left the apartment on October 30, she had no intention of returning for any reason except to "get some of my stuff." Some time after the search, Slattery in fact did return to the apartment to retrieve some of her personal belongings, including clothing, pottery, and pottery-making equipment.

{6} Defendant was charged with kidnapping, criminal sexual penetration, aggravated battery, aggravated assault, and tampering with evidence in connection with the events alleged in this case. Following the hearing on the motion to suppress, the trial court issued its order of suppression, which contained extensive findings of fact and conclusions of law detailing its reasoning. Reduced to its essence, the trial court's reasoning was that, while Slattery had joint access to and control over the apartment until October 30, once she left the apartment with no intention of returning except to retrieve her things, she abandoned any joint access or control she may have had. Part of the trial court's reasoning relied on the facts that Slattery

was not married to Defendant, that she was not formally a party to the lease of the apartment, and that she did not contribute financially to the rent. Another part of the trial court's reasoning relied on the fact that Defendant did not force Slattery out of the apartment, but rather he kidnapped and held her in it, thereby making it Slattery's own act to abandon the apartment. The trial court suppressed the photographs taken by police and all evidence obtained by them concerning their observations during the search. The State appeals that ruling.

*DISCUSSION*

■ {7} In reviewing the trial court's ruling on the motion to suppress, we determine whether the law was correctly applied to the facts, ordinarily viewing the facts in the light most favorable to the prevailing party. *See State v. Leyba*, 1997–NMCA–023, ¶ 8, 123 N.M. 159, 935 P.2d 1171; *State v. Diaz*, 1996–NMCA–104, ¶ 7, 122 N.M. 384, 925 P.2d 4. However, when a trial court makes specific written findings of fact that are supported by substantial evidence, those findings prevail over any inconsistent conclusions of law or an inconsistent judgment. *See Roybal v. Chavez Concrete & Excavation Contractors, Inc.*, 102 N.M. 428, 430, 696 P.2d 1021, 1023 (Ct.App.1985). If the evidence is conflicting, the trial court resolves the disputed factual issues. *See State v. Keyonnie*, 91 N.M. 146, 147, 571 P.2d 413, 414 (1977) (in a suppression hearing the trier of fact determines the weight and sufficiency of the evidence). When the trial court's ruling is supported by substantial evidence, a reviewing court will not set aside the ruling made below, unless it appears that the ruling was erroneously premised on the law or the facts. *See State v. Walters*, 1997–NMCA–013, ¶ 8, 123 N.M. 88, 934 P.2d 282.

■ {8} A warrantless search and seizure is unreasonable unless it falls within one of the exceptions to the warrant requirement. An exception to the warrant requirement, however, upholds as reasonable those searches which are shown to be consensual. *See Diaz*, 1996–NMCA–104, ¶ 9, 122 N.M. 384, 925 P.2d 4. The consent to search a residence may come from a third party who has common authority over the premises. *Id.; see also State v. Duffy*, 1998–NMSC–014, ¶ 66, —— N.M. ——, 967 P.2d 807; *State v. Wright*, 119 N.M. 559, 564, 893 P.2d 455, 460 (Ct.App.1995). Common authority is not derived from a mere property interest held by the third party. *See Diaz*, 1996–NMCA–104, ¶ 10, 122 N.M. 384, 925 P.2d 4. Rather, common authority refers to the mutual use of the property by persons generally having joint access or control of the property for most purposes. *Id.* The burden of establishing that an individual has common authority over the premises so as to permit a warrantless entry and search therein rests upon the state. *See Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

■ {9} Defendant argues that Slattery did not have sufficient authority to allow the search because she was not a co-lessor of the property, and that because she and Defendant were not married she therefore had no community property interest in the property. We disagree with the trial court's conclusion that Slattery "relinquished any 'common authority over, or other sufficient relationship to the premises' at the time she gave police permission to search [the premises on October 31, 1996] about 4:00 a.m." Until the time that Slattery left the apartment, she had lived there for approximately one and one-half years, her personal belongings were in various locations throughout the apartment, and she had access to all rooms in the apartment. From reviewing the extensive findings adopted by the trial court, it is obvious that the court had little doubt that Slattery had common authority over the premises up until the time she fled from the apartment. Indeed, the trial court expressly so found. The trial court, however, placed great emphasis on Slattery's intention not to resume living with Defendant once she had fled the apartment. It is not the relationship between Slattery and Defendant, however, but Slattery's relationship to the property that is important. *See United States v. McAlpine*, 919 F.2d 1461, 1464 (10th Cir.1990) (relevant analysis in third party consent cases focuses on relationship between consenter and property searched, not the relationship between consenter and cohabitant).

{10} Defendant emphasizes that because Slattery did not have a key to the apartment this indicated that she did not possess the necessary authority to authorize the entry and search of the apartment. The principal inquiry, however, is whether Slattery had access to the premises for most purposes, not whether at the time in question she had a key. *See Diaz*, 1996–NMCA–104, ¶ 10, 122 N.M. 384, 925 P.2d 4. There is no evidence that Defendant ever denied Slattery access to the apartment. In fact, Defendant testified that Slattery had access to every room throughout the time that she lived with him in the apartment. Even though Defendant testified that he asked Slattery to move out of the apartment, he did nothing to ensure that she do so, and, in fact, the trial court determined that, from October 26, 1990, "Defendant restrained and confined [Slattery] inside the apartment and refused to let her leave[.]"

{11} Defendant appears to argue that the State failed to preserve its contention that Slattery left the apartment out of fear, and that fear motivated her decision never to return. On the contrary, after the trial court issued its ruling, the State specifically pointed out that Slattery's reason for leaving the apartment was because she was afraid and she intended to report the incident to the police. In addition, at the hearing on the motion for reconsideration, the State again pointed out that Slattery testified that she left out of fear. The trial court found that Slattery's flight from the apartment and her intent not to return were directly caused by Defendant's violent misconduct. The trial court determined that "Defendant's violent misconduct upon [Slattery] ... caused her desire and intent to escape from Defendant and the Apartment[.]" Thus, it is clear that this issue was sufficiently preserved for our review. *See State v. Lopez*, 105 N.M. 538, 546, 734 P.2d 778, 786 (Ct.App.1986).

{12} Despite the trial court's finding that Slattery had common authority before she left the apartment, the trial court suppressed the evidence obtained as a result of the search. The trial court reasoned that, because Slattery left the apartment with no intent to return, the common authority that she had possessed up to that time was destroyed. We disagree.

{13} In analyzing this issue we look (1) to whether Slattery had such an interest in the premises that it is reasonable to recognize that she possessed the authority to permit inspection of the premises in her own right; and (2) to whether Defendant had a reasonable expectation of exclusive authority in the premises. *See State v. Madrid*, 91 N.M. 375, 378, 574 P.2d 594, 597 (Ct.App.1978); *see also United States v. Matlock*, 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (common authority over premises rests on mutual use of property by persons who generally have joint access or control for most purposes); *cf. State v. Larson*, 94 N.M. 795, 797, 617 P.2d 1310, 1312 (1980) (if person consenting has common authority over premises, consent to search is valid). In this case, even if Slattery did intend never to return to the apartment after she left and went to the hospital, she still retained a sufficient interest in the property to validate the consent given by her for the police to enter and search the premises. As discussed above, up to the time that she fled, Slattery possessed the requisite relationship to the apartment to allow her to consent to its search in her own right. Slattery escaped from the apartment after being held there by Defendant. It would indeed be incongruous to determine that Slattery was divested of any authority she possessed over the premises by reason of Defendant's alleged unlawful conduct which induced her to leave the apartment. Furthermore, Defendant could have no reasonable expectation that Slattery would not return accompanied by police or to retrieve her belongings. *See McAlpine*, 919 F.2d at 1465 n. 4 ("We do not believe society is prepared to recognize as reasonable the expectation that the victim of one's assault will not seek aid from the police."); *see also* 3 Wayne R. LaFave, *Search and Seizure*, § 8.3(b), at 723 (3d ed. 1996) (Defendant's "expectation of privacy is ... diminished as a consequence of the antagonism between him and a co-occupant. This is particularly true when the joint occupant of the premises is prompted to cooperate with the police because the defendant has committed a crime upon that [co-occupant]."). (Footnote omitted.)

{14} In sum, we hold that Slattery's authority to consent to a search did not vanish once she was able to flee from the apartment and to terminate her relationship with Defendant. Although her authority to consent to a search may well dissipate due to the passage of time, her return to the apartment within twenty-four hours of her departure was not of such duration as to preclude the giving of a valid consent. *Cf. United States v. Long,* 524 F.2d 660, 661 (9th Cir.1975) (wife who moved out of home because she feared for her safety, and who no longer possessed key to home, could still validly consent to search); *Madrid,* 91 N.M. at 377–78, 574 P.2d at 596–97 (wife who had not lived in home for five months could still consent to search of premises).

*CONCLUSION*

{15} The trial court's order of suppression is reversed and the cause is remanded for further proceedings on the merits.

{16} **IT IS SO ORDERED.**

PICKARD and BOSSON, JJ., concur.