Argued January 31, affirmed March 5, petition for rehearing
denied March 29, petition for review denied May 22, 1973

STATE OF OREGON, *Respondent, v.* WILLIAM
THOMAS MIDDAUGH (No. C 72-07-2257 Cr),
*Appellant.*

507 P2d 42

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*John W. Osburn,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Charles Robinowitz, Portland, filed a brief amicus curiae for the American Civil Liberties Union of Oregon.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

Defendant appeals from his conviction for criminal activity in drugs, ORS 167.207, contending that the trial court should have granted his motion to suppress evidence. Here, as in his motion, the defendant asserts that the dangerous drug introduced against him, amphetamine sulfate, is the product of an illegal search and seizure.

After the denial of the suppression motion, and trial before the court without a jury, the court found the defendant guilty, suspended the imposition of sentence and placed the defendant on probation for a term of three years. As a condition of probation the trial court required that the defendant repay costs and attorney's fees which were expended by the county in the defendant's behalf since, at the time of trial, he was indigent. ORS 161.665, 161.675, 161.685.

On appeal the defendant challenges this condition of his probation, arguing that the requirement of repayment is unconstitutional. This court recently has resolved this issue, holding that such a repayment

condition is valid. *State v. Fuller,* 12 Or App 152, 504 P2d 1393, Sup Ct *review denied* (1973).

The facts are as follows: The day of defendant's arrest, July 20, 1972, his wife, Janet Middaugh, went to the Portland police to report that her husband had assaulted her and one of their children earlier that day. An arrest warrant charging assault was sworn out against the defendant.

Mrs. Middaugh then told Officer Laven of the Women's Division that another child was still at home with the defendant, that the defendant "was coming down off a trip," and that she was afraid he would harm the child. Mrs. Middaugh also told Officer Laven that drugs could be found at the home.

Officer Laven testified that she then asked Mrs. Middaugh if she would be willing to show the officer where the drugs were kept. Mrs. Middaugh agreed. She testified that she consented to the search because of fear for her child.

Officer Laven and Mrs. Middaugh went to the home, where they were joined by Officers Moist and Callaghan.

Since Mrs. Middaugh did not have a key, they knocked on the door and were admitted by the defendant. The officers told the defendant that he was under arrest pursuant to the assault warrant. They also informed him that they wanted to see if the child in the house was unharmed.

However, Officer Laven testified that as soon as defendant opened the door she could see the child and that "* * * there was no cause for alarm as far as I could actually see with regard to the * * * child * * *."

Officer Moist then took the defendant, who, of course, was under arrest, into the living room of the house.

Mrs. Middaugh told Officer Laven that the drugs were "in the pantry." Officer Laven went there and found a bottle containing pills. However, these were apparently only aspirin, and Mrs. Middaugh then pointed to a plastic medical kit sitting on an open pantry shelf and indicated that the kit contained the illegal drugs.

Either Officer Laven or Mrs. Middaugh then picked up the kit, and Officer Laven opened it, finding needles, syringes and two white capsules in a small bottle. None of these items was visible without opening the kit, which was opaque.

Chemical analysis of the capsules showed that they consisted of amphetamine sulfate. After this analysis, while defendant was in custody under the assault warrant, he was also charged with criminal activity in drugs.

The defendant contends that the search and seizure of the amphetamine capsules violated his rights under the Fourth Amendment to the United States Constitution, and Art I, § 9 of the Oregon Constitution. The trial court found that the wife had consented to the search, and that the warrantless search was also justified because of the presence of certain exigent circumstances.

■ Warrantless searches "are *per se* unreasonable," subject to certain specifically defined exceptions. *Coolidge v. New Hampshire,* 403 US 443, 455, 91 S Ct 2022, 29 L Ed 2d 564, *reh denied* 404 US 874 (1971); *State v. Keith,* 2 Or App 133, 465 P2d 724, Sup Ct *review denied* (1970). One of the recognized exceptions

is that of consent searches, when consent is given directly by the person affected, see *State v. Douglas,* 260 Or 60, 488 P2d 1366 (1971), or by a third party who shares the possession and use of the area to be searched with the person affected. *See, State v. Frazier,* 245 Or 4, 418 P2d 841 (1966); *Frazier v. Cupp,* 394 US 731, 89 S Ct 1420, 22 L Ed 2d 684 (1969).

The majority rule is that a wife (with joint and equal rights to possession and control) may consent to a search of the family premises, and this consent circumvents the Fourth Amendment right of the husband. McCormick, Evidence 403, 406, § 175 (2d ed 1972).

In *Smith v. McDuffee,* 72 Or 276, 142 P 558, 143 P 929 (1914), the Oregon Supreme Court held that a wife may consent to a search of the living area she shares with her husband.

The defendant does not contend that a wife's consent is always invalid, nor that his wife did not consent in this case. However, he asserts that here the consent was ineffective because the medical kit was his exclusive property over which his wife exercised no control.

Both the defendant and his wife testified that the medical kit was the defendant's property, purchased with his own money. The defendant said that his wife had no authority to open the kit, that if she wanted anything from it he would get it for her. Defendant kept the kit in the pantry because the children could not reach it there.

Citing this testimony, the defendant claims that his wife had no capacity to consent to a search of property kept for his exclusive use. Several jurisdictions have recognized that while a co-occupant may validly

consent to a search of common premises, this consent may not extend to an area, or property, kept for the "exclusive use" of the other occupant. *See, State v. Evans,* 45 Hawaii 622, 372 P2d 365 (1962).

The Oregon cases have not, as such, adopted any "exclusive use" limitation to the consent doctrine. However, such a limitation is implicit in the cases. Our recent decisions have tested the validity of third party consent to a search by asking "whether the defendant had a reasonable expectation of privacy as to the areas searched." *State v. Taggart,* 7 Or App 479, 483, 491 P2d 1187 (1971). This "reasonable expectation" has "'\* \* \* a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable." \* \* \*'" *State v. Stanton,* 7 Or App 286, 293-94, 490 P2d 1274 (1971), quoting *Katz v. United States,* 389 US 347, 361, 88 S Ct 507, 19 L Ed 2d 576 (1967).

Thus, the rationale of our decisions suggests that we might recognize the "exclusive use" limitation in a situation when the exclusive user's expectation of privacy was both subjectively and objectively reasonable.

However, this is not such a case. Whatever the defendant's subjective expectations as to his exclusive use of the medical kit, we cannot hold that such a kit, sitting on an open pantry shelf, objectively indicates such exclusivity. *See, State v. Dougherty,* 8 Or App 267, 493 P2d 1383 (1972). In this situation we conclude that the police were entitled to conduct the search on the basis of the wife's consent. The wife's consent would be valid because the shared living arrangement indicates that "\* \* \* it is reason-

able to conclude that she is in a position to consent to a search and seizure of property in their home * * *." *People v. Carter,* 48 Cal2d 737, 746, 312 P2d 665 (1957).

The trial judge did not err in denying defendant's motion to suppress.

Affirmed.