[No. 2498–2.   Division Two.   August 3, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. JULIUS LEE GILLESPIE, *Appellant.*

314

*Douglas V. Alling,* for appellant (appointed counsel for appeal).

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

REED, J.—Mary Small[1] identified the defendant Julius Lee Gillespie as the man who threatened her with a broken bottle and raped her at her Lakewood residence on December 2, 1975. Betty Short identified defendant as the man who raped her at knife–point in her Tillicum home on March 10, 1976, and left with several items of her personal property. Among the things taken from the Short home was a camera with which the rapist had first taken pictures of the partially nude and blindfolded Mrs. Short after the assault.

---

[1] We have given the victims fictitious names in the interest of privacy.

After defendant was arrested and taken into custody his wife, with whom he lived sporadically, called the sheriff's office to report the presence in her home of articles that did not belong to either her or her husband. At her request a deputy sheriff went to the Gillespie residence, and with both oral and written permission from Mrs. Gillespie, took possession of the property, which proved to be that taken from the Short residence. While in the residence Mrs. Gillespie also consented to a search of defendant's army field jacket and to its removal from their bedroom closet. The jacket contained film which, after being developed, produced photos the Shorts had taken and pictures of Mrs. Short as she appeared after the rape.

Other articles taken from the Short home were recovered from the residence of defendant's girl friend, Donna Pokorna, with whom they had been left by the defendant for storage. Pokorna also gave her verbal and written consent to a search of the premises and to the seizure of the articles found there. The trial court refused to suppress the items seized at either locale and defendant was found guilty of two counts of first–degree rape and one count of robbery while armed with a deadly weapon. We affirm his convictions.

Defendant first contends the trial court erred in admitting the "hearsay" testimony of Detective Durham of the Pierce County sheriff's office that he was given verbal and written consent to search the Gillespie and Pokorna residences. This argument has no merit. The statements were offered to explain the officer's involvement in the case and his subsequent actions in seizing the stolen items. *State v. Finkley,* 6 Wn. App. 278, 492 P.2d 222 (1972); *see also* E. Cleary, *McCormick's Handbook of the Law of Evidence* § 249, at 588 (2d ed. 1972). The statements were simply "verbal acts"; their significance lay not in the truth of any matter asserted therein but in the fact they were made. *Palin v. General Constr. Co.,* 47 Wn.2d 246, 287 P.2d 325 (1955); 2 C. Torcia, *Wharton's Criminal Evidence* § 274 (13th ed. 1972).

██ Defendant complains that Detective Durham's searches and seizures were violative of defendant's Fourth Amendment rights against unreasonable search and seizure because they were accomplished without benefit of a search warrant. We cannot agree. Clearly defendant had no standing to challenge a search of the Pokorna home. There was no evidence he had any interest in or right of dominion and control over the Pokorna premises. *State v. Kearney,* 75 Wn.2d 168, 449 P.2d 400 (1969); *State v. Wooten,* 44 Wn.2d 177, 266 P.2d 342 (1954). With regard to the search and seizure at defendant's home, the evidence is undisputed that there was no subterfuge or any overreaching on the officer's part and that Mrs. Gillespie was advised of her rights, after which she fully and freely gave her consent both orally and in writing. As defendant's wife, she had an equal right to the occupancy of the premises and could thus authorize a search. Evidence found and seized as the result of such a consensual search is admissible. *United States v. Matlock,* 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974); *State v. Porter,* 5 Wn. App. 460, 488 P.2d 773 (1971); *State v. Bellows,* 72 Wn.2d 264, 432 P.2d 654 (1967); E. Cleary, *McCormick's Handbook of the Law of Evidence* § 175, at 403, 406 (2d ed. 1972).

██ Next defendant asserts that, even if the general search of his residence is upheld, the search and seizure of the army field jacket containing the exposed film cannot be. He argues that the joint dominion and control of a husband and wife over the family home does not extend to a nonconsenting spouse's personal effects in which there is a special expectation of privacy or, as is sometimes said, the consent of a co-occupant to search and seize does not extend to an area, or property, kept for the exclusive use of the nonconsentor. *State v. Evans,* 45 Hawaii 622, 372 P.2d 365 (1962). Our cases have not drawn any such distinction, however. *State v. Edwards,* 5 Wn. App. 852, 490 P.2d 1337 (1971); *cf. State v. Smith,* 88 Wn.2d 127, 559 P.2d 970 (1977). In any event we are not prepared to adopt such an "exclusive use" rule on the facts of the instant case. Here

the co–occupants were husband and wife, living together, though sporadically; the field jacket was an ordinary item of defendant's wearing apparel which had been left hanging in the community home in a community closet. Under these circumstances we see no reason to carve out an exception to the authority of a spouse to consent to a search and seizure. *Accord, State v. Middaugh,* 12 Ore. App. 589, 507 P.2d 42 (1973).

Lastly, defendant contends the trial court should have declared a mistrial when, as the jury was being polled, the first juror asked the court what the consequences would be if the juror answered "No." We find no error because the trial judge quickly explained what was required for conviction and that each juror must vote his own conscience. The juror then joined with her follow jurors in confirming that the verdicts were unanimous on all three counts and on the special "deadly weapon" finding. In all, after the judge's explanation, the recalcitrant juror answered "Yes" a total of 8 times and her fellow jurors answered "Yes," within her hearing, 88 times. The affidavit of defendant's attorney in support of his motion for a new trial may not be considered to impeach the verdicts. *State v. Gay,* 82 Wash. 423, 144 P. 711 (1914); *State v. Hughes,* 14 Wn. App. 186, 540 P.2d 439 (1975).

We find the assignments of error in defendant's supplemental brief to be either repetitious of his counsel's brief or without merit.

We affirm defendant's convictions.

PETRIE, C.J., and PEARSON, J., concur.

Reconsideration denied September 8, 1977.

Review denied by Supreme Court March 17, 1978.