1998-NMCA-154

966 P.2d 785

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Lisa CLINE, Defendant–Appellant.**

**No. 18,567.**

Court of Appeals of New Mexico.

Sept. 8, 1998.

Certiorari Denied, No. 25,374, Oct. 14, 1998.

Tom Udall, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, for Appellee.

John D. Cline, Freedman, Boyd, Daniels, Hollander, Guttmann & Goldberg, P.A., Albuquerque, for Appellant.

## OPINION

BOSSON, Judge.

{1}  Lisa Cline (Defendant) was convicted of possession of cocaine discovered when a police officer, acting without a warrant, opened a zippered cosmetics pouch taken from her bedroom.  The officer got the pouch from Defendant's husband who told the officer there were drugs inside and consented to the search.  Defendant appeals the district court's denial of her motion to suppress, and we must decide whether the warrantless search of her pouch and the testing of its contents violates the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution.  We hold that the husband's actions constituted a valid consent to the officer's search of the pouch, and therefore the State did not infringe upon Defendant's rights under either the federal or the state constitutions.  We affirm the decision of the district court.

## BACKGROUND

{2}  At about 1:45 a.m. on December 28, 1995, deputies of the Lea County Sheriff's Department responded to a call concerning a domestic dispute.  When the officers arrived at Defendant's home, she was standing on the porch with a suitcase.  Defendant told Deputy Velasquez that her husband had locked her out and would not let her back in the house.  With Mr. Cline's permission, Deputy Velasquez went inside to speak with him while another officer stayed outside with Defendant.

{3}  Mr. Cline was evidently angry at his wife.  He told Deputy Velasquez that he was having problems with his wife, that she went out drinking and came home late, and that he did not want her staying in the house.  Mr. Cline told Deputy Velasquez that his wife had a drug problem, that he had given his wife money to buy Christmas gifts for the children, and that she had spent it on drugs.  Deputy Velasquez asked Mr. Cline if there were any drugs around the house and Mr. Cline told him that he had found a cosmetics pouch in the bedroom belonging to his wife which contained paraphernalia and other items.  Mr. Cline retrieved the pouch from their bedroom to show Deputy Velasquez.  With Mr. Cline's permission, Deputy Velasquez unzipped the pouch and looked inside, where he saw some pieces of paper, two syringes, cotton swabs, cotton balls, a metal spoon with white residue, pieces of wire, and two plastic bags containing a residue of white powder.  Other than a video rental card, there were no personal effects inside the pouch.

{4}  By this time Defendant had been brought inside the house, and she was seated at the dining room table.  Deputy Velasquez asked Defendant if the pouch was hers, and she admitted that it was.  Defendant was then advised of her rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and was questioned by Deputy Velasquez.  After questioning Defendant, Deputy Velasquez asked her if she had somewhere to spend the night and then drove her to another residence so that there would be no more problems between the Clines that night.  Officer Velasquez took the pouch as evidence and told Defendant that he would contact the district attorney's office about it.  Defendant was subsequently placed under arrest and charged with possession of cocaine.

{5}  Before trial Defendant moved to suppress the evidence found in the pouch, asserting that it was obtained in violation of the

Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. Defendant argued that the evidence should be suppressed because it had been obtained without a warrant, without probable cause, and was the result of an unreasonable and illegal search and seizure in violation of both the federal and state constitutions. The court denied the motion, and eventually Defendant was found guilty of possession of cocaine. On appeal, Defendant raised the following issue in her docketing statement: "Whether the district court erred in failing to grant Defendant's Motion to Suppress Evidence, which was based upon the lack of a search warrant, the lack of a valid consent to search, and the lack of exigent circumstances to justify a warrantless search." *See State v. Gonzales,* 111 N.M. 590, 593, 808 P.2d 40, 43 (Ct.App.1991) (when a case is assigned to the general calendar all issues properly raised in the docketing statement are revived). We hold that Husband's consent to the officer's search of the pouch under these circumstances disposes of the search and seizure issues under both constitutions. We therefore affirm.

## DISCUSSION

{6} We review the district court's ruling on a motion to suppress to determine whether the law was correctly applied to the facts, viewing the facts in the light most favorable to the prevailing party. *See State v. Diaz,* 1996–NMCA–104, ¶ 7, 122 N.M. 384, 925 P.2d 4. A trial court's denial of a motion to suppress will not be disturbed if it is supported by substantial evidence unless it also appears that the ruling was incorrectly applied to the facts. *See State v. Galloway,* 116 N.M. 8, 9, 859 P.2d 476, 477 (Ct.App. 1993). When conflicting testimony exists, "it is the trial court's prerogative to determine the credibility of the evidence." *State v. Affsprung,* 115 N.M. 546, 547, 854 P.2d 873, 874 (Ct.App.1993). Whether that evidence complies "with constitutional requirements is, however, a legal question reviewed by the appellate court on a *de novo* basis." *State v. Vargas,* 120 N.M. 416, 418, 902 P.2d 571, 573 (Ct.App.1995) (citing *Affsprung,* 115 N.M. at 547, 854 P.2d at 874; *State v. Jones,* 114 N.M. 147, 150–51, 835 P.2d 863, 866–67 (Ct.

App.1992)). We begin with the analytical framework adopted by our Supreme Court in *State v. Gomez,* 1997–NMSA–006, ¶¶ 20–21, 122 N.M. 777, 932 P.2d 1, for interpreting the federal and state constitutions.

{7} Under the interstitial approach to state constitutional interpretation adopted in *Gomez,* we ask first whether the motion to suppress should have been granted under the federal constitution. *See id.* ¶ 19, 122 N.M. 777, 932 P.2d 1. If not, then we proceed to the New Mexico Constitution. *See id.* Both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution protect the right of the people to be free from unreasonable searches and seizures, particularly in the privacy of their homes. *See Vargas,* 120 N.M. at 418, 902 P.2d at 573. Under the exclusionary rule, "[e]vidence that is unconstitutionally obtained is inadmissible at trial[.]" *City of Albuquerque v. Haywood,* 1998–NMCA–029, ¶ 9, 124 N.M. 661, 954 P.2d 93. We have held that a warrantless search or seizure is constitutionally unreasonable unless it is shown to fall within one of the exceptions to the warrant requirement, and it is settled that a "valid consensual search has been acknowledged as an exception to the warrant requirement." *Diaz,* 1996–NMCA–104, ¶ 9, 122 N.M. 384, 925 P.2d 4; *see id.* ¶ 8, 122 N.M. 384, 925 P.2d 4. Moreover, as this Court stated in *Diaz,* a third party who has common authority over the property may normally give consent to a search. *See id.* ¶¶ 8–9, 122 N.M. 384, 925 P.2d 4. "The authority which justifies the third-party consent does not rest upon the law of property ... but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *United States v. Matlock,* 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (citations omitted); *see also State v. Reynolds,* 119 N.M. 383, 386, 890 P.2d 1315, 1318 (1995) (citing *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 19

L.Ed.2d 576 (1967) (Harlan, J., concurring) (stating objects that a person exposes to the plain view of outsiders are not protected by the Fourth Amendment because no intention to keep them private has been exhibited)).

### The United States Constitution

{8} We examine, first of all, the police's role in acquiring the pouch. This is not a case in which the police had probable cause to believe they would find drugs at the Cline residence and searched without a warrant because of exigent circumstances. They had no suspicion at all, but were given the evidence by Defendant's husband. This is a similar situation to that in *Coolidge v. New Hampshire*, 403 U.S. 443, 487–90, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), in which the United States Supreme Court held that when a wife voluntarily produced guns and clothes belonging to her husband and gave them to the police, albeit under the mistaken belief that the evidence would clear her husband of suspicion, such conduct did not amount to an unreasonable search and seizure by the state. The Court commented that "[h]ad Mrs. Coolidge, wholly on her own initiative, sought out her husband's guns and clothing and then taken them to the police station to be used as evidence against him, there can be no doubt under existing law that the articles would later have been admissible in evidence." *Id.* at 487, 91 S.Ct. 2022. Excluding evidence voluntarily given to the police, the Court observed, would not serve the purpose of the exclusionary rule which is to deter police misconduct: "The exclusionary rules were fashioned 'to prevent, not to repair,' and their target is official misconduct." *Id.* at 488, 91 S.Ct. 2022 (quoting *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960)). The Court continued: "[I]t is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals." *Id.* In holding there was no misconduct by the police, the Court reasoned that "it cannot be said that the police should have obtained a warrant for the guns and clothing before they set out to visit Mrs. Coolidge, since they had no intention of rummaging around among Coolidge's effects or of dispossessing

him of any of his property." *Id.* Our Court, too, has recently emphasized the primary purpose of the Fourth Amendment exclusionary rule as being to " 'deter future unlawful police conduct.' " *Haywood*, 1998–NMCA–029, ¶ 9, 124 N.M. 661, 954 P.2d 93 (quoting *State v. Ramirez*, 89 N.M. 635, 639, 556 P.2d 43, 47 (Ct.App.1976), *overruled on other grounds by Sells v. State*, 98 N.M. 786, 788, 653 P.2d 162, 164 (1982)).

{9} In Defendant's case, it is not apparent to us how the police engaged in official misconduct of any kind, much less misconduct that would require suppression of evidence as a means of deterring unlawful police conduct under the Fourth Amendment. The police were called to the Cline residence because of a domestic dispute, not to look for evidence incriminating Defendant of drug possession. Once they arrived, Mr. Cline volunteered the information about his wife being a drug user and that he had found a pouch containing drugs in his wife's suitcase. Mr. Cline retrieved the pouch and gave it to the officer. The initiative to incriminate Defendant came from Mr. Cline, not from any investigation on the part of the police. Indeed, the facts in this case show even more clearly than in *Coolidge* that Mr. Cline intended the police to inspect the pouch and its contents, and in so doing he intended to incriminate his wife. Knowing what the pouch contained, Mr. Cline handed it to the police, told them what was inside, and then, having stimulated their curiosity, he assented to their inspection. As in *Coolidge*, the police simply accepted what was given to them.

{10} Although Mr. Cline's production of the pouch was prompted by Deputy Velasquez' question about whether Defendant had any drugs in the house, rather than completely on his own initiative, it was Mr. Cline who told the officer that his wife was a drug user. Mr. Cline was neither pressured nor coerced, and the district court made no such finding. The voluntariness of Mr. Cline's consent to opening the pouch is not in dispute. A police officer's request to view an object and his subsequent inspection of it is not unconstitutional if there is consent. *See State v. Williams*, 117 N.M. 551, 555 n. 3, 874 P.2d 12, 16 n. 3 (1994).

{11} Of course, in this case, the consent came not from Defendant but from her apparently estranged husband. Defendant has argued to this Court that Mr. Cline could not validly consent because the pouch belonged to her, and because given her proximity at the time, the police should have requested permission directly from her rather than talking to her husband. Defendant relies on this Court's observation in *Diaz*, 1996–NMCA–104, ¶ 16, 122 N.M. 384, 925 P.2d 4, that "[o]ther jurisdictions have held as a matter of law that if the person whose property is to be searched is present, then the police must request his consent for the search rather than relying on the consent of a third party."

{12} We do not agree. We believe Defendant is being overly ambitious in her reading of *Diaz*. In that case we held that a father could not consent to a police search of a room in his house which was occupied by his 29–year–old son. We noted that the father did not have shared use of the room and joint access to its contents even though the father was the sole owner of the house. *Diaz*, 1996–NMCA–104, ¶¶ 15–16, 122 N.M. 384, 925 P.2d 4. Relying on *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), we said in *Diaz*, 1996–NMCA–104, ¶ 9, 122 N.M. 384, 925 P.2d 4: "Consent to a search may come from not only the owner of the property, but also from a third party who has common authority over that property." We also cited *Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. 988 for the proposition that the state has the burden of establishing common authority justifying a consent to search, and the state must come forward "with persuasive evidence of both shared use and joint access in order to support a third-party consent[.]" *Diaz*, 1996–NMCA–104, ¶ 9, 122 N.M. 384, 925 P.2d 4. *Matlock* involved actual cohabitants of a common room, with one giving consent to the search. Unlike *Matlock*, the facts presented in *Diaz* failed to persuade the district court that the father had common authority and joint access regarding his son's room. It was in that context that we required the police to secure the permission of the son, who was present at the scene, before intruding upon the privacy of his room and conducting a warrantless search of its contents. *See Diaz*, 1996–NMCA–104, ¶ 15, 122 N.M. 384, 925 P.2d 4.

{13} The legal relationship and relative expectation of privacy involved in *Diaz* strike us as fundamentally different from the relationship between cohabitating spouses. In *Diaz* we explained that unlike spouses or cohabitants of a bedroom, the son had "far greater access and control and a superior privacy interest," which is not the norm for the relationship between spouses and shared marital property. *Diaz*, 1996–NMCA–104, ¶ 16, 122 N.M. 384, 925 P.2d 4. Neither *Diaz* nor the cases cited therein involve situations in which spouses had equal access to the contents of the marital residence. *Cf. City of Laramie v. Hysong*, 808 P.2d 199, 203–04 (Wyo.1991) (upholding spousal consent to search residence even in the face of protest by other spouse who was present).

{14} This Court held, even prior to *Matlock*, but consistent with it, that if no area of the home is reserved for the exclusive use of one spouse, or if the item searched or seized is not taken from an area reserved for the exclusive use of one person, then the consent of one spouse is valid. *See State v. Kennedy*, 80 N.M. 152, 154, 452 P.2d 486, 488 (Ct.App. 1969). Under such circumstances, this Court reasoned in *Kennedy* that, as a joint possessor of the premises, the wife could consent in her own right, on behalf of her own interest, and not just on behalf of her spouse's property interest, to a search of the premises over which she had common authority and in which she had a common interest. *See id.; see also State v. Madrid*, 91 N.M. 375, 377–78, 574 P.2d 594, 596–97 (Ct.App.1978) (following and applying *Matlock* to approve of spousal consent to a search of the husband's residence in which spouse had not lived for some time).

{15} Following *Matlock*, other jurisdictions have held that one spouse can consent to a search of the marital residence and effects in his or her own right. *See, e.g., United States v. Sealey*, 830 F.2d 1028, 1031 (9th Cir.1987) (wife could consent to search of sealed containers without markings suggesting sole ownership by husband); *State v. Martin*, 635 So.2d 1036, 1038 (Fla.Dist.Ct.

App.1994) (holding wife's consent to search of apartment following husband's arrest for robbery included jewelry bag found in bedroom closet where "the bedroom closet was not set aside for the defendant's exclusive use, but was shared by both the defendant and his wife"); *People v. Ford*, 83 Ill.App.3d 57, 38 Ill.Dec. 281, 403 N.E.2d 512, 517, 518 (Ill.App.Ct.1980) (wife could consent to search of husband's tool box in basement where "basement was not locked and the wife was not instructed not to handle the tools," because "mere fact that the defendant alone may have used these tools does not indicate that his wife was denied the mutual use, access to, or control over them"); *Bruce v. State*, 268 Ind. 180, 375 N.E.2d 1042, 1072–73 (Ind.1978) (wife's consent to search dresser, closet, and jewelry box upheld notwithstanding defendant's claim of exclusive use, as she generally had joint access to all areas within her own bedroom, where those objects were located); *Sullivan v. State*, 716 P.2d 684, 686–87 (Okla.Crim.App.1986) (spouse could consent to search of marital residence even though she was moving out); *State v. Middaugh*, 12 Or.App. 589, 507 P.2d 42, 44–45 (Or.Ct.App.1973) (holding wife's consent to search medical kit on pantry shelf valid "because the shared living arrangement indicates that 'it is reasonable to conclude that she is in a position to consent to a search and seizure of property in their home'" even though husband purchased medical kit with his own funds and required wife to obtain his permission before opening kit (citation omitted)); *State v. Gillespie*, 18 Wash.App. 313, 569 P.2d 1174, 1176 (Wash.Ct.App.1977) (wife could consent to search of husband's jacket left hanging in the community closet). *See generally* Timothy E. Travers, Annotation, *Admissibility of Evidence Discovered in Search of Defendant's Property or Residence Authorized by Defendant's Spouse (Resident or Nonresident)—State Cases*, 1 A.L.R.4th 673 (1980). Professor LaFave has observed that in most cases the exclusive-use limitation is seldom of much significance in husband-wife cases, "for while in common experience friends sharing an apartment could be expected to maintain their respective areas of exclusive use, this would not generally be expected in the context of the more intimate

marital relationship, where '[both] exercise[ ] control over the property.'" 3 Wayne R. LaFave, *Search and Seizure* § 8.4(a), at 762 (3d ed.1996) (alteration in original) (quoting *People v. Duren*, 9 Cal.3d 218, 107 Cal.Rptr. 157, 507 P.2d 1365, 1381 (Cal.1973) (in bank) (per curiam)).

{16} We note that there was no evidence below, and the district court made no findings, that this pouch was under the exclusive control of Defendant and that Mr. Cline was not permitted access to it, unlike the presumption that normally arises from marital property. We conclude, therefore, that the husband's consent to Deputy Velasquez' request to inspect the pouch was valid, and the inspection, even without a warrant, did not constitute an unreasonable search in violation of the Fourth Amendment. We need not decide whether the result would be the same if Defendant had protested her husband's consent or his authority to give permission. *Cf. People v. Reynolds*, 55 Cal.App.3d 357, 127 Cal.Rptr. 561, 567–68 (Ct.App.1976) (in the face of a vocal objection, spousal consent insufficient to authorize a search), *overruled on other grounds by People v. James*, 19 Cal.3d 99, 137 Cal.Rptr. 447, 561 P.2d 1135, 1138 (Cal.1977). Because we hold that Mr. Cline's consent is a valid exception to the warrant requirement of the Fourth Amendment to the United States Constitution, we must proceed to examine whether there is any compelling reason why his consent should not constitute an exception as well to the warrant requirement of Article II, Section 10 of the New Mexico Constitution.

## The New Mexico Constitution

{17} In *State v. Wright*, 119 N.M. 559, 565, 893 P.2d 455, 461 (Ct.App.1995), we held that Article II, Section 10 limited the ability to consent to a search to those having actual authority to do so: "[W]here the State relies upon consent to justify a warrantless search of a residence, there is no 'apparent authority' exception under Article II, Section 10 of the New Mexico Constitution." We stated that the search and seizure provision of the New Mexico Constitution requires that consent to search be given "by someone who is clothed with common authority or possesses

some other sufficient relationship concerning the premises in question." *Id.*, 119 N.M. at 564, 893 P.2d at 460.

{18} In Defendant's case, Mr. Cline, as one with common authority over the premises and other community property within it, had actual authority to consent to a search of that same property. Defendant makes no argument nor points to anything in the record that would lead us to conclude that the husband's relationship with his spouse, with the marital property, or with the marital residence, deviated in any way from the inferences of common access and authority that normally arise in the context of a marriage. *See* LaFave, *supra*, § 8.4(a), at 762. Defendant argues that an angry husband or wife should not be allowed to destroy a spouse's expectation of privacy, and we do not take issue with such a statement of abstract principle. However, as we have shown, because the husband in this case consented in his own right, as a joint possessor, to a search of mutually owned property, he is in effect consenting to a search of his own property or property in which he has a common interest. In such an instance of shared access and legal interest, the wife normally can have no reasonable expectation of privacy vis-a-vis her husband or vice versa. *See Kennedy*, 80 N.M. at 154, 452 P.2d at 488. Moreover, this Court has held that even when one spouse no longer lived with her spouse, because she still had keys to the residence and had clothing and personal effects there, she "could validly consent to a . . . search of the residence" which led to the discovery of incriminating evidence against her husband. *Madrid*, 91 N.M. at 377, 574 P.2d at 596; *see also State v. Walker*, 1998–NMCA–117, ¶ 13, 125 N.M. 603, 964 P.2d 164 (N.M.Ct.App.1998) (holding that consent to search house without a warrant could be given by former co-habitant who had abandoned the residence in an effort to escape).

{19} If anything, therefore, New Mexico's presumption of mutual control over most marital property as embodied in the Community Property Act of 1973, NMSA 1978, §§ 40–3–6 to –17 (1973, as amended through 1995), declares a state public policy that is consistent with an inference of authority in spouses to consent to a search under most circumstances—an inference that is even stronger than federal case law or case law from other states involving different marital presumptions. *See Hysong*, 808 P.2d at 204 ("In our equality state we see no valid reason why her husband's refusal should cancel her consent."). Thus, we conclude that there is no basis in New Mexico law that would support a more restrictive interpretation of spousal consent to search, and therefore a greater protection for an accused under our state constitution than that afforded under the Fourth Amendment to the United States Constitution. This is especially the case when, as here, the consent pertains to objects one spouse has found in the marital home and has delivered to the police, "[w]here there is no showing that defendant's personal effects were taken from an area reserved to defendant's exclusive use[.]" *Kennedy*, 80 N.M. at 155, 452 P.2d at 489.

{20} Defendant also argues that the private search doctrine under *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), does not apply in this case because the scope of the government search exceeded the scope of Mr. Cline's search and because we should not adopt the doctrine in New Mexico. The private search doctrine has not been addressed in New Mexico. It applies to searches conducted by private parties—in *Jacobsen*, employees of a private mail carrier—which are then repeated by government agents. The subsequent government search is held not to violate the defendant's Fourth Amendment rights because the private search has already infringed upon the defendant's expectation of privacy, as long as the government search does not exceed the scope of the private search. *See Jacobsen*, 466 U.S. at 120, 104 S.Ct. 1652. Because Mr. Cline's valid consent disposes of this appeal, we do not reach the question of whether Mr. Cline's examination of the pouch constituted a valid private search under *Jacobsen* and whether we need import that doctrine into New Mexico law.

**CONCLUSION**

{21} We conclude that when a spouse finds incriminating evidence and voluntarily delivers it to the police and consents to an

examination of that evidence, neither the Fourth Amendment nor Article II, Section 10 prohibit the admission of the evidence at trial. Affirmed.

{22}   **IT IS SO ORDERED.**

HARTZ, C.J., and DONNELLY, J., concur.