[No. 21006-5-III. Division Three. December 16, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSE RANGEL-REYES, *Appellant*.

*Kevin L. Holt*, for appellant.

*Steven M. Lowe, Prosecuting Attorney*, and *Frank W. Jenny II, Deputy*, for respondent.

KATO, A.C.J. — Jose Rangel-Reyes (Mr. Rangel) appeals his conviction for delivery of a controlled substance. He contends the court improperly admitted out-of-court statements of a witness who was not available at trial. He also contends the evidence was insufficient to prove he was more than merely present at the scene of the drug deal. We affirm.

This prosecution arose from a drug transaction between Rudolfo Gonzalez (a police informant) and Jose Garcia (a.k.a. "Joe Blow") on July 20, 2001. Report of Proceedings (RP) at 5-6. Mr. Gonzalez telephoned Mr. Garcia, and Mr. Garcia stated that he could obtain up to a kilo or a pound of cocaine. The two men agreed to meet at a parking lot at a Wendy's restaurant in Pasco. Mr. Gonzalez wore a body wire to transmit and record his conversations.

Mr. Gonzalez testified at trial that, while he was waiting at the parking lot, Mr. Garcia said "the person who was going to bring—who was going to do the hookup was on his way." RP at 8. Mr. Gonzalez also testified he and Mr. Garcia discussed the price of the drugs while they waited. Mr. Gonzalez asked Mr. Garcia, "Who's going to come[,] Tito?" Ex. 8 at 1. Mr. Garcia responded, "[N]o, my brother in law." *Id.* Mr. Garcia also mentioned the man would be driving a car or a red extended-cab pickup.

Within a few minutes, Mr. Rangel arrived at the parking lot in a silver car, and Mr. Garcia got in. Mr. Gonzalez testified he could hear portions of the conversation through the car's partially opened window: "[T]hey were talking about prices and how much you could get." RP at 10.

Mr. Gonzalez testified that, after Mr. Garcia emerged from the car, Mr. Garcia told him he could deliver only four

ounces and the price was $625 per ounce. Mr. Garcia told Mr. Gonzalez to meet him at Garibaldi's Restaurant, and he would bring the drugs. Mr. Garcia then left in Mr. Rangel's car.

Police followed Mr. Rangel's car to Centennial Park, where Mr. Garcia got out. Except for a period of about two minutes, an officer watched Mr. Garcia while he waited in the park without contacting any other person. Meanwhile, Mr. Rangel drove to his residence, which was about three-fourths of a block from the park. Police were unable to follow the car as Mr. Rangel left the residence, but several minutes later he picked up Mr. Garcia at the park. They drove back to Mr. Rangel's residence, then to Garibaldi's Restaurant.

At the restaurant, Mr. Garcia met again with Mr. Gonzalez and handed him 125 grams of cocaine. The two men then talked about an additional purchase of a kilo of cocaine later that day. Police then arrested Mr. Garcia. Mr. Rangel, who had left the scene after dropping Mr. Garcia at the restaurant, was arrested a few minutes later.

A maroon extended-cab pickup was at Mr. Rangel's residence when police arrived to conduct a search. The registration for the truck, in Mr. Rangel's name, was inside the residence. During the search, officers also found a wad of cash totaling $1,300 and a cell phone that showed Mr. Garcia had called earlier that day. The officers also found at least one uncashed paycheck.

Mr. Rangel was charged with delivery of a controlled substance in a drug-free zone. He waived his right to a jury trial.

Mr. Garcia did not testify at trial. Mr. Rangel testified Mr. Garcia was a friend of his brother-in-law, who had asked for a ride. The brother-in-law, who lived with Mr. Rangel, corroborated this testimony. Mr. Rangel testified he picked Mr. Garcia up as requested at the Wendy's parking lot, dropped him off at the park, and picked him up a few minutes later before dropping him off again at Garibaldi's

Restaurant. Mr. Rangel presented evidence that he had withdrawn $1,000 from his bank account on July 6 so he could buy a car, and this was part of the money police had found in the search of his residence.

The trial court found Mr. Rangel guilty as charged.

■ We first consider whether Mr. Gonzalez's testimony, recounting out-of-court statements made by Mr. Garcia, violated Mr. Rangel's right of confrontation. Mr. Rangel did not object at trial to the admission of Mr. Garcia's statements. Failure to raise an issue at trial generally waives the issue on appeal. *See* RAP 2.5(a). Mr. Rangel apparently contends, however, that the statements were inadmissible hearsay that violated his constitutional right of confrontation. *See* RAP 2.5(a)(3) (appellant may raise "manifest error affecting a constitutional right" for first time on appeal).

■ ■ "When out-of-court assertions are used for nonhearsay purposes, no confrontation clause concerns arise." *State v. Neslund*, 50 Wn. App. 531, 556, 749 P.2d 725, *review denied*, 110 Wn.2d 1025 (1988). An out-of-court statement is hearsay only if it is "offered in evidence to prove the truth of the matter asserted." ER 801(c). Here, Mr. Garcia's statements were not offered to prove the truth of their contents; they were merely Mr. Garcia's "verbal acts," whose significance was simply that they were made. *See State v. Gillespie*, 18 Wn. App. 313, 315, 569 P.2d 1174 (1977), *review denied*, 89 Wn.2d 1019 (1978); *see also* 5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 801.10, at 297-300 (4th ed. 1999). Because the statements were not hearsay, their admission did not implicate Mr. Rangel's right of confrontation.

■ Alternatively, a statement is not hearsay if it is offered against a party and is a statement of the party's coconspirator during the course of and in furtherance of the conspiracy. ER 801(d)(2)(v). A statement that falls within this "firmly rooted" exception to the hearsay rule does not violate a defendant's right of confrontation. *Bourjaily v. United States*, 483 U.S. 171, 182-84, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987). Mr. Garcia's statements were offered

against Mr. Rangel and were made in furtherance of his conspiracy to sell cocaine.

Mr. Rangel relies on *State v. Martinez*, 105 Wn. App. 775, 783-85, 20 P.3d 1062 (2001), which addressed admissibility of hearsay testimony under the "present sense impression" exception to the hearsay rule. *See* ER 803(a)(1). In *Martinez*, the statements clearly were offered for their substantive truth and were not statements by a coconspirator. Because the hearsay exception did not apply, the court held the testimony violated the defendant's right of confrontation. Here, by contrast, Mr. Garcia's out-of-court statements were not hearsay, and they also were admissible as statements of a coconspirator. *Martinez* is distinguishable.

Admission of Mr. Garcia's statements did not violate Mr. Rangel's right of confrontation.

■■ We also consider whether the evidence was sufficient to convict Mr. Rangel. On a challenge to the sufficiency of the evidence, we must view the evidence in a light most favorable to the prosecution, and we must determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980). We must draw all reasonable inferences in the State's favor and interpret them most strongly against the defendant. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). The same standard applies regardless of whether the case is tried to a jury or to the court. *See State v. Little*, 116 Wn.2d 488, 491, 806 P.2d 749 (1991). The elements of a crime may be established by either direct or circumstantial evidence, and one type of evidence is no more or less trustworthy than the other. *State v. Gosby*, 85 Wn.2d 758, 765-66, 539 P.2d 680 (1975).[1]

---

[1] Mr. Rangel again relies on *Martinez*, in which this court held that "circumstantial evidence must be consistent with the hypothesis that the defendant is guilty, and inconsistent with any hypothesis or theory tending to establish innocence." *Martinez*, 105 Wn. App. at 786; *see State v. Todd*, 101 Wn. App. 945, 950, 6 P.3d 86 (2000). This is no longer the rule in Washington, we noted recently in *State v. Zunker*, 112 Wn. App. 130, 135, 48 P.3d 344 (2002), *review denied*, 148

■ The trial court found Mr. Rangel guilty as an accomplice, which requires (among other things) that he knew his acts would promote or facilitate the crime. *See* RCW 9A.08.020(3)(a). A defendant's mere presence at the scene, even with knowledge of the criminal activity, does not establish accomplice liability. *In re Welfare of Wilson*, 91 Wn.2d 487, 491, 588 P.2d 1161 (1979).

■ ■ Although there was no direct evidence that Mr. Rangel knowingly facilitated the drug transaction, the circumstantial evidence was substantial. Before meeting Mr. Rangel, Mr. Garcia was unable to give Mr. Gonzalez a price for the cocaine. But after speaking privately with Mr. Rangel, Mr. Garcia was able to give both the price and the amount of the proposed sale. Mr. Garcia and Mr. Rangel left, and Mr. Garcia waited alone at a nearby park while Mr. Rangel drove away. A few minutes later, he picked up Mr. Garcia and drove him to Garibaldi's Restaurant, where the sale was made. A reasonable inference from this evidence is that Mr. Rangel was Mr. Garcia's cocaine supplier and that Mr. Rangel knowingly facilitated the transaction. Other evidence found at Mr. Rangel's residence was consistent with this inference. In addition, the trial court implicitly found Mr. Rangel's explanation was not credible, and that finding is not subject to review on appeal. *See State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989). Based on the evidence, a rational trier of fact could have found Mr. Rangel was an accomplice to the drug deal. The evidence was sufficient.

The conviction is affirmed.

SCHULTHEIS and KURTZ, JJ., concur.

---

Wn.2d 1012 (2003). To the extent *Martinez* and *Todd* conflict with *Gosby*, they are overruled.