This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                                          **NO. 29,322**

**EARL LAMPLEY,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF QUAY COUNTY**
**David P. Reeb, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Kennedy & Han, P.C.
Paul J. Kennedy
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**KENNEDY, Judge.**

Defendant appeals his convictions for Driving While Intoxicated (DWI) and unlawful possession of a switchblade. *See* NMSA 1978, §§ 66-8-102 (2008), 30-7-8 (1963). Defendant was tried by jury in the magistrate court and appealed his convictions to the district court. During the bench trial before the district court, Defendant made an oral motion to suppress the evidence of the DWI investigation and the seized switchblade knife, arguing that there was a violation of his Fourth Amendment and state constitutional rights. The motion was denied. On appeal, Defendant argues that it was error for the district court to deny his suppression motion. We affirm.

**FACTUAL BACKGROUND**

During the evening of June 27, 2006, Defendant's wife called a neighbor (Garret) and asked for help. While on the telephone, Garret could hear screaming, things breaking, and Defendant cussing. Garret called police. Approximately ten minutes later, Defendant's wife arrived at Garret's door. After she arrived, Defendant called Garret's house at least three times and was cussing loudly and sounded drunk. Garret went outside to wait for police and noticed that an officer was headed toward his home and Defendant was driving toward his home from another direction. Defendant drove by but Officer Borjas stopped at Garret's house. Garret told the officer that Defendant was in the truck, that Defendant's wife was inside his home,

that Defendant had called and made threats, that Defendant was irate, and that Defendant had been known to carry a gun.

Officer Borjas observed Defendant's truck driving away. Following his conversation with Garret, Officer Borjas pursued Defendant. He testified that he was investigating a domestic disturbance and that he pursued Defendant in order to continue his investigation by speaking with Defendant. When the officer caught up to Defendant's truck, he engaged his emergency lights, but Defendant did not stop. The officer believed that Defendant's failure to stop "was indicative that he had done something wrong [and] was trying to get away . . . from the law." Officer Borjas followed Defendant to his home. Defendant stopped his truck, ran into his home, and then stood looking out of the storm door.

Based on the videotape of the encounter, the officer exited his car and was walking toward the front door when Defendant opened the storm door and held it open. Officer Borjas said, "Hello sir, can I talk to you for a minute?" Defendant agreed. When he encountered Defendant, Officer Borjas noticed that Defendant had bloodshot, watery eyes and smelled of alcohol. The officer asked his name and asked if Defendant had identification. Defendant was on the telephone and told the officer that he was calling his lawyer because he knew "what is going on." Defendant was still standing inside his doorway at the time.

Officer Borjas informed the dispatcher that he was with the other party of the "domestic" and it looked "like the guy's been drinking." Defendant stepped out of his house and onto the porch and later went to his truck to retrieve his identification. On his way to his truck and while he was looking for his identification, Defendant repeatedly asked the officer, "we are all good, right?" When Defendant began to walk back to his house, he asked Officer Borjas if he wanted to come in and have some tea. In response, Officer Borjas asked him to "come over here," but Defendant did not comply with the officer's request and instead returned to the porch.

Once they were back on the porch, Officer Borjas continued his investigation into the domestic dispute and asked Defendant, "how much have you drank (sic) tonight, sir?" Defendant responded, "I don't know four or five beers." Later, the officer asked Defendant, "what time did you drink the beers?" Defendant's response was, "oh, probably started after supper."

While Officer Borjas relayed information to the police dispatcher, Defendant continued to talk about "disgruntled employees," his wife's medication and inexperience with drinking hard liquor, and her pain from oral surgery. Defendant told the officer that an injury on his thumb was the result of punching a door. Defendant also informed Officer Borjas that he had knives in his pocket and removed them for the officer. Defendant was asked to perform field sobriety tests. After the

4

tests were completed, Officer Borjas told Defendant he was under arrest for DWI. Defendant responded, "I don't think so," and ran away.

**DISCUSSION**

On appeal from a trial court's ruling on a motion to suppress, findings of fact are reviewed to determine if they are supported by substantial evidence and legal conclusions are reviewed de novo. *State v. Leyba*, 1997-NMCA-023, ¶ 8, 123 N.M. 159, 935 P.2d 1171. "We review the district court's ruling on a motion to suppress to determine whether the law was correctly applied to the facts, viewing the facts in the light most favorable to the prevailing party." *State v. Cline*, 1998-NMCA-154, ¶ 6, 126 N.M. 77, 966 P.2d 785.

**Seizure**

During the proceedings in the district court, Defendant asked that all evidence of the DWI investigation and the switchblade be suppressed due to the violation of his Fourth Amendment rights and his state constitutional rights. At trial, Defendant claimed that, at the point that he was ordered out of his house and as soon as he crossed the threshold, his rights were violated. According to Defendant, he did not leave his house "on his own volition," and the officer's actions constituted an unlawful seizure. Defendant's arguments below and on appeal are that the suppression motion should have been granted because he was subjected to unlawful seizure when Officer Borjas (1) ordered him to exit his house even though he did not possess a warrant, or (2) "coerced" him into exiting his house through a "show of

authority."

The videotape of the incident does not support Defendant's claims. Instead, the videotape shows that, when Officer Borjas approached Defendant's door, Defendant voluntarily opened the door as the officer approached, the officer calmly asked if he could speak with Defendant, and Defendant agreed. Defendant stepped out onto the porch while talking with the officer and eventually left the porch to go to his truck for his identification. The videotape shows that the officer was polite and not demanding in any way during his encounter with Defendant. There is nothing to suggest that Officer Borjas ordered Defendant to open his door or ordered him to exit his house. The videotape establishes that Defendant opened his door and spoke with the officer voluntarily. The argument made to the district court in support of his suppression motion, that he was ordered out of his house by Officer Borjas, was not supported by the evidence.

On appeal, Defendant raises a new basis in support of his suppression motion. Defendant argues that he was not given a choice, but was "compelled" to exit the house based on a "show of authority" as evidenced by the officer's "mien, tone of voice, . . . visible sidearm," and the time of night and remoteness of the location. This particular argument was not made so as to fairly invoke a ruling from the district court. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280

(explaining the requirements of issue preservation).

Moreover, there is nothing depicted in the videotaped encounter that would support Defendant's claim that he was "compelled" to exit his house by the officer's "show of authority." In deciding whether an officer displayed a "show of authority" sufficient to constitute a seizure, we look at whether the officer's words or actions would have caused a reasonable person to believe that he was being ordered to submit to the officer's directions. *See State v. Gutierrez*, 2007-NMSC-033, ¶ 34, 142 N.M. 1, 162 P.3d 156 (referring to *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). A seizure based on a claim of "show of authority" requires that the defendant submitted to the "show of authority." *State v. Harbison*, 2007-NMSC-016, ¶ 12, 141 N.M. 392, 156 P.3d 30. First, we point out that Defendant was never asked or ordered to exit his home and when he did step onto the porch, he made a choice to do so. As the officer approached Defendant, Defendant voluntarily opened his door. The officer requested permission to talk to Defendant using a calm and respectful tone. His demeanor and actions as he was approaching Defendant and asking to speak with him cannot be characterized as directives or commands. There is nothing to support Defendant's claim that he was "coerced" by the officer's behavior into exiting his home. In fact, before the officer observed signs that Defendant was intoxicated, there is nothing to suggest that Defendant was even asked to exit his home. We therefore reject

Defendant's argument.

**CONCLUSION**

Based on our review of the record and the district court's decision, we hold that the district court correctly denied Defendant's suppression motion. Since Defendant was neither ordered by the officer, nor compelled to leave his house, evidence of the DWI investigation and the seized switchblade knife are admissible. Based on our discussion, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:


_____
**CYNTHIA A. FRY, Chief Judge**


_____
**JAMES J. WECHSLER, Judge**