2003-NMCA-113

77 P.3d 279

**EL PASO FIELD SERVICES
COMPANY, Plaintiff–
Appellant,**

v.

**MONTOYA SHEEP & CATTLE CO.,
INC., Defendant–Appellee.**

No. 22,735.

Court of Appeals of New Mexico.

June 18, 2003.

Sarah M. Singleton, Carolyn A. Wolf, Montgomery & Andrews, P.A., Santa Fe, NM, for Appellant.

Thomas J. Hynes, Hynes, Hale & Gurley, Farmington, NM, for Appellee.

*OPINION*

FRY, Judge.

{1} This is an appeal from the district court in a proceeding brought under the Gathering Line Land Acquisition Act (the Act). NMSA 1978, §§ 70–3A–1 to –7 (1988, as amended through 1993). El Paso Field Services (El Paso) petitioned the district court to establish the amount of money owed to Montoya Sheep and Cattle Company (Montoya) for the purchase of two gathering line easements on Montoya's property. Pursuant to the statute, the district court appointed a hearing officer who awarded Montoya a lump sum payment and annual access fees. El Paso appealed the hearing officer's decision to the district court. The district court affirmed the hearing officer's decision and El Paso appeals from that final judgment. We reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

{2} Prior to the enactment of the Act, the process for condemnation of easements for oil and gas gathering lines was under the Pipelines Eminent Domain Power statute. NMSA 1978, § 70–3–5 (1993). *See Kennedy v. Yates Petroleum Corp.*, 104 N.M. 596, 598, 725 P.2d 572, 574 (1986). That statute permitted the acquisition of land and right-of-way for a pipeline using the procedures set forth in the Eminent Domain Code. NMSA 1978, §§ 42A–1–1 to –34 (1981, as amended through 2001). However, Section 70–3–5 was later amended to exclude gathering lines from the types of pipelines for which property could be condemned through the right of eminent domain, providing, after amendment, that the authorization to exercise the right of eminent domain "shall not apply to gathering lines" other than specified types of pipelines not relevant to the present case. § 70–3–5(B). The Act was subsequently enacted in 1988 to provide a process for acquiring easements for gathering lines excluded from Section 70–3–5.

{3} The Act provides a process for a mineral developer to purchase an easement from a property owner for the purpose of constructing an oil or gas gathering line. § 70–3A–3(A). The Act requires that the parties first attempt to negotiate the terms of the easement through offers and counterproposals. § 70–3A–3. If negotiations are unsuccessful, the mineral developer may petition the district court to appoint a hearing officer to decide the terms of the easement. § 70–3A–3(C). The hearing officer is directed to conduct an evidentiary hearing, Section 70–3A–4(E) & (F), and to file a written report containing findings of fact and conclusions of law with the district court. § 70–3A–6(A)(1). The parties may appeal the decision of the hearing officer to the district court. § 70–3A–6(A)(2).

{4} At issue in this case are Subsections B and C of Section 70–3A–5, concerning the amount of compensation and damages awarded. Those Subsections provide, in relevant part:

> The report of the hearing officer shall include findings concerning the following:
>
> . . . .
>
> B. the cost of acquisition or any contract to acquire comparable easements if the transaction or contract was freely made in good faith within a reasonable time before or after the date the petition was filed or other credible evidence of the market value of the easement to be acquired; and
>
> C. amount of damages sustained by the property owner for:
>
> (1) loss of agricultural production and income;
>
> (2) lost value of improvements;
>
> (3) cost for surface reclamation . . .;
>
> (4) inconvenience to the property owner in use of his property; and
>
> (5) burden on the property owner of continued inspection and repair of the gathering line by the mineral developer.
>
> In no case shall the total amount of compensation or damages awarded pursuant to Subsections B and C of this section be greater than one-half of the sum of the reasonable cost of surface reclamation plus twice the market value of the easement to

be acquired as determined in Subsection B of this section.

§ 70–3A–5.

{5} Section 70–3A–5 provides that there are two amounts the hearing officer may award the property owner. First, the property owner is entitled to be compensated for the property taken for the easement. § 70–3A–5(B). The amount of this compensation can be established by evidence of the cost of acquisition, contracts for the purchase of comparable easements, or evidence of market value. *Id.* Second, the property owner is entitled to damages for loss of production and income, loss of improvements, costs for surface reclamation, inconvenience in use of the property, and burden of continued inspection and repair. § 70–3A–5(C). The statute also imposes a cap on the compensation awarded to the property owner. *Id.* There is no case law interpreting this statute.

**FACTS**

{6} In this case, there is no dispute that the requirements of Section 70–3A–3 were met. El Paso sought to acquire two easements—the "Burlington" easement and the "Merrion" or "CPD" easement—on property belonging to Montoya. Negotiations failed between the parties, and El Paso petitioned the district court to appoint a hearing officer. The hearing officer conducted a hearing and filed his report with the district court. The Act requires the hearing officer's report to include findings of fact regarding the route, compensation for the easement, and amount of damages sustained by the property owner. § 70–3A–5. There was no dispute over the route of the easements.

{7} El Paso introduced evidence establishing that, within the last twelve-month period, it had obtained other easements with nearby landowners for $30 per rod and that this amount compensated the owners for both market value and damages. It also introduced an appraisal stating the fair market value of the Burlington easement to be $1,523 and of the Merrion easement to be $9,860.

{8} Montoya presented evidence of agreements it had negotiated in the last few years for easements. These agreements provided

for annual payments for each pipeline or well built on its property. Another landowner testified that El Paso had agreed to pay him an initial fee of $25 per rod for a pipeline easement, plus an annual fee of $.50 per rod.

{9} The hearing officer made the following findings of fact and conclusions of law concerning this issue:

FINDINGS OF FACT

. . . .

11. El Paso has negotiated other perpetual easements to construct these pipelines with nearby landowners for $30.00 per rod total compensation and damages within the last twelve month period.

12. A qualified appraiser has established the fair market value of the Burlington pipeline easement, 30 feet wide, to be $1,523.00 and of the CPD pipeline easement at 60 feet wide to be $9,860.00. These appraisals can be translated to $22.16 per rod for easements 30 feet wide.

13. Montoya uses its property for grazing cattle.

14. Other than during the actual time of construction and reseeding, Montoya will be able to use the property subject to the easement for cattle grazing except that it is uncertain how long the land will take to produce grazing grass even with reseeding.

15. While there was no direct evidence of the cost of surface reclamation, Defendant provided contracts from other oil companies to acquire comparable easements, made freely and in good faith within a reasonable time before the date the Petition in this case was filed.

16. These contracts provide for annual access fees of $.50 per linear foot of easement.

17. Plaintiff is paying other individuals in San Juan County annual access payments related to the acquisition of pipeline easements.

18. The most appropriate method of compensating Defendant in this cause is with a dual payment system wherein an initial payment is made to Defendant for the damages resulting from the construction of the pipeline, plus annual access fees

to compensate Defendant for the inconvenience and burden placed on the property owner for continued inspections and repair of the gathering line by Plaintiff.

19. Defendant should receive an initial payment for damages from Plaintiff on the Merrion easement at the rate of $35.00 per rod or $7,786.00.

20. Defendant should be compensated by Plaintiff for initial damages on the Burlington easement at the rate of $35.00 per rod for a total payment of $2,405.00.

21. Defendant should be paid the sum of $1,500.00 annually for an access fee for the Merrion pipeline.

22. Defendant should be paid the sum of $500.00 annually for an access fee for the Burlington pipeline.

CONCLUSIONS OF LAW

. . . .

7. The market value of the Merrion easement, computed in accordance with § 70–3A–5(B), NMSA 1978 Comp., is $7,786.0[0] for initial damages, plus annual payments from Plaintiff in the amount of $1,500.00 until such time as the easement is abandoned by Plaintiff.

8. The market value of the Burlington easement, computed in accordance with § 70–3A–5(B), NMSA 1978 Comp., is $2,405.00 for initial damages, plus annual payments from Plaintiff in the amount of $500.00 until such time as the easement is abandoned by Plaintiff.

{10} El Paso appealed the hearing officer's report to the district court. El Paso argued that the hearing officer did not calculate the compensation to be awarded in the manner required by the Act, that the findings of fact did not support the conclusions of law, and that the award exceeded the statutory cap. The district court affirmed the hearing officer's decision. El Paso now appeals the district court's judgment.

**DISCUSSION**

**Standard of Review**

■ {11} We initially address the parties' arguments concerning the standard of review to be applied by this Court. El Paso asserts that our review is de novo because it raises an issue of statutory interpretation. *See*

*N.M. Dep't of Labor v. A.C. Elec., Inc.*, 1998–NMCA–141, ¶ 8, 125 N.M. 779, 965 P.2d 363. Montoya argues that this Court should review the hearing officer's findings of fact under the clearly erroneous standard, citing Section 70–3A–6. We agree with El Paso.

■ Section 70–3A–6 provides, in part:

A. Within forty-five days after the appointment of the hearing officer:

(1) the hearing officer shall prepare a report. . . . He shall file the report with the clerk of the court. . . . The clerk shall mail notice of the filing to all parties; and

(2) the district court shall accept the hearing officer's findings of fact unless clearly erroneous. Within ten days after being served with notice of the filing of the report, either party may appeal the decision of the hearing officer to the district court. The court, after review, may adopt or modify the report.

The mandatory requirement that the hearing officer's findings be accepted by the district court unless clearly erroneous applies to the district court's initial acceptance of the findings, not the district court's review on appeal.

■ {12} On appeal to this Court, El Paso does not contend that there was not substantial evidence to support the hearing officer's findings of fact. Rather, El Paso argues that the statute was not correctly applied. Specifically, it maintains the hearing officer did not find a fair market value for the easement, as required by Section 70–3A–5(B), or the amount of damages sustained by the property owner, as required by Section 70–3A–5(C). Determining whether the hearing officer's decision was in accordance with the Act is a question of law to be decided by this Court de novo. *Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 113 N.M. 9, 12, 820 P.2d 1323, 1326 (1991) ("When a party is challenging a legal conclusion, the standard for review is whether the law correctly was applied to the facts, viewing them in a manner most favorable to the prevailing party, indulging all reasonable inferences in support of the court's decision, and disregarding all inferences or evidence to the contrary."); *Perkins v. Dep't of Human Servs.*, 106 N.M. 651, 656, 748 P.2d 24, 29 (Ct.App.1987). Consequent-

ly, to the extent El Paso challenges the hearing officer's interpretation of the statute, our review is de novo.

### Compensation and Damages Awards

◼ {13} Section 70–3A–5(B) relates to the fair market value of property taken for a pipeline easement, while Subsection C concerns additional damages sustained by a property owner as a result of pipeline construction and use. El Paso contends that the hearing officer's findings appear to address both market value and damages, while his conclusions of law appear to award only the damages amount. Even more confusing, the amount awarded in the conclusions is termed "market value" rather than "damages." Thus, El Paso argues the conflict between the findings and the conclusions precludes enforcement of the hearing officer's award.

◼ {14} We recognize that findings of fact supported by the evidence prevail over inconsistent conclusions of law. *State v. Walker,* 1998–NMCA–117, ¶ 7, 125 N.M. 603, 964 P.2d 164 ("[W]hen a trial court makes specific written findings of fact that are supported by substantial evidence, those findings prevail over any inconsistent conclusions of law or an inconsistent judgment."); *see also, Sachs v. Bd. of Trs. of Cebolleta Land Grant,* 89 N.M. 712, 718, 557 P.2d 209, 215 (1976) (stating that "where a conclusion conflicts with, or does not follow, a finding of fact, the finding of fact controls and the appellate court will apply the proper conclusion of law"). However, the findings here are themselves conflicting. By making a finding on the qualified appraiser's market value of $22.16 per rod (Finding 12), it appears the hearing officer was adopting this amount as the basis for calculating the market value of the easements. However, the hearing officer also made a finding on the cost to acquire comparable easements at a rate of $30.00 per rod (Finding 11). Both methods for calculating the amount of compensation to be awarded under Section 70–3A–5(B) are permitted by statute which allows calculation of value through "any contract to acquire comparable easements" or through "other credible evidence". In addition, both rates appear to be supported by

evidence in the record. Nevertheless, the hearing officer essentially adopted two different methods, each with different values, for computing the amount of compensation due under Section 70–3A–5(B). The hearing officer then calculated what he first labeled as "initial damages" at the even higher rate of $35.00 per rod (Findings 19 and 20), without any findings to explain how that amount was supported by the evidence. In addition, as El Paso argues, although the annual "access fees" initially appeared to constitute an award for damages under Section 70–3A–5(C) (Findings 21 and 22), the hearing officer later refers to them as the "market value" of the easements, and states that they were computed in accordance with Section 70–3A–5(B) (Conclusions 7 and 8).

◼ {15} We hold that the statute requires the hearing officer to make findings concerning both the amount of compensation due under Section 70–3A–5(B), and the amount of damages due under Section 70–3A–5(C). To include elements of damages from Section 70–3A–5(C) in the determination of compensation due under Section 70–3A–5(B) is contrary to the statute. Because Section 70–3A–5(C) provides a formula for calculating the maximum amount of compensation or damages that can be awarded under the statute, allowing a lump sum award under Section 70–3A–5(B) that includes elements of damages under Section 70–3A–5(C) also potentially circumvents the cap.

{16} Consequently, we reverse the district court's judgment and remand to the hearing officer to clarify the findings concerning the amount of compensation to be awarded under Subsection B, and the amount of damages to be awarded under Subsection C. *See Green v. Gen. Accident Ins. Co.,* 106 N.M. 523, 527, 746 P.2d 152, 156 (1987) ("[W]hen findings wholly fail to resolve in any meaningful way the basic issues of fact in dispute, they become clearly insufficient to permit the reviewing court to decide the case at all.") (internal quotation marks and citation omitted); *cf. Kruskal v. Moss,* 1998–NMCA–073, ¶ 10, 125 N.M. 262, 960 P.2d 350 (stating that where the trial court's findings and conclusions fail to show the basis for its decision, remand for additional findings is appropri-

**380**

ate). The findings should not be a recitation of the evidence, but should constitute the hearing officer's final determination after weighing all the evidence.

### Annual Payments

■ {17} We next address the issue of annual payments under the statute. The parties agree that the primary issue of contention was whether Section 70–3A–5 provides for acquisition of easements by lump sum payment or annual payments. El Paso acknowledges that the access fees Montoya sought by way of annual payments appear to be the same as the payment for damages provided in Section 70–3A–5(C)(4) and (5). This is consistent with the testimony at the hearing concerning the burden of continued pipeline maintenance and inconvenience to the property owner. However, El Paso opposes what it considers annual rental fees because the statute entitled it to purchase an easement, and not a lease for right-of-way. In addition, El Paso argues that annual payments are inconsistent with the statute because the cap in Subsection C cannot be calculated unless the award is in the form of a lump sum.

{18} However, at oral argument, El Paso agreed that the cap can be calculated if the annual fees were viewed as damages and reduced to present value by the hearing officer. We see nothing in the statute precluding the award of damages in the form of annual payments. As long as the statutory cap in Subsection C can be applied, annual payments are not contrary to the statute. If on remand the hearing officer awards damages to be paid annually, he must calculate the present value of the amount awarded. Because there was no evidence in the record concerning the facts necessary to calculate present value, the hearing officer may have to take evidence on the issues of the appropriate interest rate and estimated lives of the gathering lines.

### Statutory Cap

{19} Finally, we address the statutory cap because the hearing officer will be required to apply it on remand. Section 70–3A–5(C) provides, in relevant part:

In no case shall the total amount of compensation *or* damages awarded pursuant to Subsections B and C of this section be greater than one-half of the sum of the reasonable cost of surface reclamation plus twice the market value of the easement to be acquired as determined in Subsection B of this section.

(Emphasis added.) Applying the statutory cap as written is meaningless. As written, the equivalent mathematical formula would be as follows:

$B \leq \frac{1}{2} [SR + 2(B)]$ and $C \leq \frac{1}{2} [SR + 2(B)]$

The letter "B" represents compensation due under Section 70–3A–5(B), or market value in this case, "C" is Section 70–3A–5(C) damages, and "SR" signifies surface reclamation costs. Here, Montoya did not sustain any surface reclamation costs because El Paso agreed to pay for or perform surface reclamation, so those costs are zero. We assign hypothetical values to demonstrate our point. Applying the cap would result in the following calculations:

If B = 5,000, C = 10,000 and SR = 0,

Then,

$B \leq \frac{1}{2} [SR + 2(B)]$

$5000 \leq \frac{1}{2} [0 + 2(5000)]$

$5,000 \leq \frac{1}{2} (10,000)$

$5,000 \leq 5,000$

But,

$C \leq \frac{1}{2} [SR + 2(B)]$

$10,000 \leq \frac{1}{2} [0 + 2(5000)]$

$10,000 \leq \frac{1}{2} (10,000)$

$10,000 \leq 5,000$

■ {20} As demonstrated by this hypothetical, the landowner could never recover anything more than compensation under Subsection B, or in this case, market value. This is because if we assume that surface reclamation costs are zero, as they are in this case, half of two times the market value is always going to equal market value. Applying the cap in this manner eliminates any further recovery for damages under Subsection C. *See High Ridge Hinkle Joint Venture v. City of Albuquerque,* 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (stating that when "several sections of a statute are in-

volved, they must be read together so that all parts are given effect"). Therefore, a more reasonable interpretation, as suggested by El Paso, is that damages under Subsection C cannot exceed the sum of half the surface reclamation costs plus twice the market value. The equivalent mathematical formula is as follows:

$C \leq [\frac{1}{2}(SR)] + 2(B)]$

If $B = 5{,}000$, $C = 10{,}000$ and $SR = 0$,

Then,

$10{,}000 \leq [\frac{1}{2}(0)] + [2(5000)]$

$10{,}000 \leq 0 + 10{,}000$

$10{,}000 \leq 10{,}000$

We adopt this interpretation of the cap and direct the hearing officer to apply the cap in this manner on remand.

## CONCLUSION

{21} For the foregoing reasons we reverse the district court, and remand to the hearing officer for proceedings consistent with this opinion. Both parties shall bear their own costs on appeal.

{22} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CELIA FOY CASTILLO, Judges.